No. 41,398

LENA MAY ROBERTS, *Appellee,* v. GRACE B. COOTER and JAMES R. COOTER, *Appellants,* ROBERT C. MORT and HARRY HARRISON, *Defendants.*

(339 P. 2d 862)

Opinion filed May 16, 1959.

*R. L. Hamilton,* of Beloit, argued the cause and was on the briefs for the appellants.

*Don W. Noah,* of Beloit, and *Clarence Paulsen,* of Concordia, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This action was denominated and referred to in the court below as an action for a declaratory judgment. However, the pleadings do not meet the requirements of a suit for a declaratory judgment. (*City of Cherryvale v. Wilson,* 153 Kan. 505, 112 P. 2d 111.) This was a simple equitable action brought in the district court of Cloud county by plaintiff, Lena May Roberts, a living testatrix, to set aside and cancel a contract in a will, *i. e.,* a contractual will, on the ground of fraud, duress and coercion. The trial court made findings of fact and conclusions of law, and in accordance therewith rendered judgment for the plaintiff (appellee). Following the overruling of defendants (appellants) Grace B. and James R. Cooter's post-trial motions, they appeal. The defendants Robert C. Mort and Harry Harrison do not appeal.

Plaintiff is now a widow eighty-four years of age and has lived in Beloit, Mitchell county, for more than sixty-six years. Her husband, E. E. Roberts, died in 1955. They had one child, defendant Grace B. Cooter. Grace had one child by her first marriage, defendant Robert C. Mort, and one child by her second marriage, defendant James R. Cooter. Defendant Harry Harrison was the executor named in the contractual will. At the time this action was commenced defendants Grace Cooter and Harry Harrison were residents of Mitchell county; James was a resident of Saline county, and Robert was a resident of Johnson county, Missouri. Service of summons was made upon the defendant Robert Mort in Cloud county (G. S. 1949, 60-509), and upon the other defendants in their respective counties in accordance with G. S. 1949, 60-2502.

Grace and James appeared specially in the Cloud county district court and filed a motion to quash the service of summons on the ground that the court was without jurisdiction of their persons or the subject matter of the action and that the venue was in Mitchell county. This motion was overruled, and numerous other motions, demurrers and answers, which need not be set out or summarized, were filed. Suffice it to say, issues were joined and the case proceeded to trial.

The pertinent facts are as follows: Plaintiff and her husband, now deceased, during their many years of marriage acquired extensive land holdings and other property in Mitchell county. They were estranged from their daughter, Grace, for several years prior to Mr. Roberts' death. Visits between them were rare, if any, and Grace had not been in plaintiff's home since the year 1951. In March, 1953, plaintiff and her husband had their family lawyer, William N. Tice, draft some deeds to convey some of their land to each of their grandsons, Robert Mort and James Cooter. Mr. Tice drafted three deeds, one to Robert Mort and two to James, reserving life estates in the grantors, which deeds were signed and acknowledged by plaintiff and her husband. These deeds, as drafted, were unsatisfactory to the Roberts and were kept in their possession. In December, 1953, the two deeds to James were returned by them to Mr. Tice to be used as a model in preparing new deeds, which were signed and acknowledged by the Roberts. The new deeds were put in their safety deposit box and were not delivered to anyone. The March, 1953 deeds to James, which were turned over to Mr. Tice in December, were to be returned to plaintiff and her husband, or destroyed. Plaintiff never saw them again.

Plaintiff testified that the March, 1953 deeds to James were never left with anyone for delivery to James or any other party; that the deed to Robert Mort was taken from the bank box by plaintiff and recorded July 17, 1954, without the consent of her husband. Plaintiff's husband died in 1955 and the estate was probated in the probate court of Mitchell county. The attorney for the administratrix of Mr. Roberts' estate was of the opinion that the March, 1953 deed to Robert Mort, which had been recorded without permission of decedent, was invalid for failure of delivery. At the attorney's request, Robert Mort quitclaimed to plaintiff the real estate described in the March, 1953 deed to get the land back in the Roberts' estate. The probate court found that the Robert Mort deed had never been delivered and that Robert Mort had made a reconveyance of the same to the plaintiff. The probate court further found that the real estate described in all of the aforementioned deeds had been held by decedent and plaintiff as joint tenants, and that plaintiff became the sole owner by survivorship.

Mr. Tice, who had prepared the March, 1953 deeds for the Roberts, died in 1955, and some two years later his widow found the March, 1953 deeds to James among his many papers. The admin-

istrator of the Tice estate advised Mrs. Tice to give the deeds to Mr. Hamilton, the attorney for that estate. She did so. Mr. Hamilton then informed defendant James Cooter he had the deeds and suggested that James place them on record. Mr. Hamilton gave these deeds to James' wife, who recorded them March 7, 1957.

Plaintiff testified she did not know of these happenings and when she read an article in the newspaper on the evening of March 7, wherein it was stated that she had conveyed the property to James, she was "stunned and paralyzed." (She had been operated on for cancer in July, 1956, but was able to be up and around on the evening in question.) "She just knew she was in some trouble." "She thought the land described there was gone forever." She telephoned attorney Orin C. Jordan, who had been employed by her as attorney for her husband's estate. He stated he knew nothing about the matter. She then called defendant James Cooter at his home in Salina and he informed her Mr. Hamilton had given him the deeds, that he [James] had recorded them and they would stay recorded. She then telephoned her daughter, Grace, who stated she knew little or nothing about the deeds except that they had been recorded by James' wife. A few minutes thereafter Grace came to plaintiff's home for the first time since the year 1951. Grace "declared she didn't know anything about it, that it was all Jim's doings." Grace stayed with plaintiff until ten o'clock that night. Plaintiff further testified that she never went to bed but walked the floor all night; that she thought everything she had was gone, that her income was gone.

The next morning, about eight o'clock, her daughter, Grace, came back to plaintiff's home and stayed until 11:30. Grace told her James and his wife were in Beloit. Grace returned again to plaintiff's home about 12:30 that afternoon and about one o'clock Mr. Jordan called to inquire if he could be of any help. Plaintiff stated she then asked him to try to get back the March, 1953 deeds from James. Jordan came to plaintiff's home shortly thereafter, at which time she told him James was in Beloit. Jordan told plaintiff to be at his office at 2:30 that afternoon. Grace took plaintiff to his office at that time. Plaintiff stated she did not remember the conversation with Grace during the interim because she was anxious to see if James would sign the deed conveying the land back to her. After she and Grace arrived at Jordan's office he and Grace telephoned James, who refused to come down to Jordan's office for a conference. James stated he would not sign any deed of reconveyance.

Grace then suggested that if plaintiff would make a will as she [Grace] wanted it, she would get James (her son) to sign the deed reconveying to plaintiff the property described in the March, 1953 deeds.

The contractual will in question was then prepared in Jordan's office with Grace and the plaintiff present. It was signed by plaintiff and placed in a sealed envelope in Jordan's safe, where it remained until James signed the deed reconveying to plaintiff the property described in the March, 1953 deeds to James, thus removing the cloud on plaintiff's title. This deed recited that it was given for *"no cash consideration as this is a corrective* deed." (Emphasis supplied.) The envelope containing the mentioned will was placed in escrow at the First National Bank.

Plaintiff was given the deed from James and a carbon copy of the will. She placed the will in her safety deposit box and recorded the deed. She testified she did not remember the discussion giving rise to the execution of the will because she was so dizzy and sick. She did not remember that Jordan and his secretary witnessed the will, nor did she remember she signed the envelope in which it was placed. She testified she was not advised that the March, 1953 deeds recorded by James reserved a life estate to her, and no one told her such deeds were probably invalid for lack of delivery. After the will was drawn and signed she said, "Now I've got to go home. Everything is getting black to me, and I can't stay here any longer." Grace took plaintiff to her home, where she was confined over the weekend because of illness.

The will which plaintiff signed under the mentioned circumstances devised to Grace a life estate in certain real property, then a life estate in the same property to James, and the remainder in fee to the issue of the body of James or, in the event he died without living issue, to his wife. The will devised the rest of the real property to defendant Robert Mort for life and the remainder in fee to the issue of his body or, in the event he died without living issue, to defendant James or "the heirs of his body." It bequeathed the personal estate to Robert and further provided:

"SEVENTH: I hereby state and declare that I have agreed with my said daughter, Grace B. Cooter, to make the devises and bequests set forth in this Will, upon condition that she will aid me in securing a quitclaim deed from my grandson, James R. Cooter and his wife, for certain real estate, erroneously deeded to him; and I further declare that this Will is a contractual Will which shall not be subject to any modification without the written consent of my said daughter. I further authorize the First National Bank of Beloit, Kansas, to

hold this Will in escrow upon condition that it shall be delivered to my said Executor upon my death."

Plaintiff testified that a week later she read her copy of the will and realized for the first time that Robert's wife was cut off from any inheritance; that Mr. Jordan had told her when he drafted the will she could change it any time but it would be necessary for Grace to go with her to the bank to get the will; that she telephoned Grace and said: "Grace, will you go down to the bank and help me get that will. I can't let that there go, because Estaline [Robert's wife] and if they have adopted children, can't draw one thing. I said, 'I can't treat Estaline like that.' I said, 'Your father and I would want Bob's [Robert's] wife and children whether they were theirs or not—adopted or not, to have what we give Bob,' and she said, 'No, I won't. *That will is just the way I want it. That's the way it's going to be,'* and bang went the receiver." (Emphasis supplied.) Plaintiff then consulted attorney Ralph Noah and learned for the first time the legal significance of the irrevocable, contractual portion of the will. As a consequence this action followed.

Upon this and other evidence in the voluminous record, not narrated herein, the trial court made extensive findings of fact and conclusions of law. Summarized in the interest of brevity insofar as possible, the lower court found that the March, 1953 deeds executed by plaintiff and her husband to James were never delivered to James or anyone else, and further found:

"17. Defendant Grace B. Cooter suggested if plaintiff would make a new will the way she, Grace, wished, she would secure a deed conveying the property contained in Plaintiff's Exhibits 'C' and 'D' [the March, 1953 deeds to James] to plaintiff from defendant James R. Cooter and his wife. The execution of this will was discussed at considerable length in the office of Orin C. Jordan by the said Orin C. Jordan, the plaintiff, and the said Grace B. Cooter, defendant. During this discussion, plaintiff, because of lack of sleep and her distraught mental state, was emotionally disturbed and unable to think clearly. Her memory of the happenings of this day is confused. She was not advised that the deeds, signed and acknowledged March 26th and 27th, 1953, might not be valid because of non-delivery. She was of the opinion she had lost her land and was desperate to recover it. Under these circumstances, plaintiff agreed to a new will satisfactory to Grace B. Cooter, defendant. Orin. C. Jordan prepared the will (Plf's. Exhibit 'B'), and said will was signed and acknowledged by the plaintiff as provided by law. The will was read to her by said Orin C. Jordan, but due to her confused and distraught state of mind, plaintiff was unable to fully comprehend the legal significance. . . ."

The court further found that the deed, or reconveyance, made by James and his wife to plaintiff was for no cash consideration and

was merely a corrective deed; and also found that Robert C. Mort was a beneficiary under the will and had a legal interest in the action.

The court concluded as a matter of law that it had jurisdiction of the subject matter and the parties involved; that the deeds of March, 1953 were never delivered to James R. Cooter; that plaintiff and her husband, E. E. Roberts, deceased, never divested themselves of title to the land described in the deeds and such deeds created a cloud on the plaintiff's title; that the execution by plaintiff of the contractual will was obtained by duress and coercion and was not the free and voluntary act of the plaintiff; that there was lack of consideration to support the contractual part of the will, and that the contractual will was invalid. Judgment was entered accordingly.

Appellants first contend that Robert C. Mort was neither an interested nor a necessary party to this action and consequently personal service of summons upon him in Cloud county conferred on the district court of that county no jurisdiction of his person; hence, it had no jurisdiction of these appellants.

G. S. 1949, 60-411 provides that any person who has or claims an interest in a controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of the question involved may be made a defendant. Unquestionably, Robert is a beneficiary under the contractual will sought to be set aside and canceled. If the contractual feature of the will were held to be valid, then the will could not be revoked or changed by plaintiff and Robert would inherit a substantial estate. On the other hand, if the will were held to be invalid and thereby canceled, Robert would lose his right of inheritance under the terms thereof and plaintiff could execute a new will disinheriting him. Moreover, should plaintiff die intestate while Grace was still living, Robert would inherit nothing. Without further comment, it is apparent that Robert had a legal interest to protect in this action and was, therefore, not only a proper but a necessary and indispensable party. (1 Bartlett Kan. Prob., Rev. Ed., § 499, p. 626; *Ayers v. Graff,* 153 Kan. 209, 109 P. 2d 202; *McFadden v. McFadden,* 174 Kan. 533, 538, 257 P. 2d 146; *Steele v. Pedroja,* 178 Kan. 441, 451, 289 P. 2d 738.)

When instituting a suit for the cancellation of a written instrument, the plaintiff should join as parties plaintiff or as parties defendant, according to the nature of their interests, all persons whose rights or privileges may be in any way affected by the granting of

the relief sought. (*Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.*, 168 Kan. 259, Syl. ¶ 5 and corresponding portion of opinion, 212 P. 2d 348; 9 Am. Jur., Cancelation of Instruments, § 54, p. 395; 12 C. J. S. Cancellation of Instruments § 52, p. 1027.)

The record discloses that personal service of summons was had upon Robert in Cloud county in accordance with the provisions of G. S. 1949, 60-509, and that personal service of summons was had upon the remaining defendants in their respective counties in accordance with G. S. 1949, 60-2502; that, as a consequence, the district court of Cloud county had jurisdiction of the parties to this action. (*Jones v. Coate*, 177 Kan. 109, 276 P. 2d 329; *Cassity v. Brady*, 182 Kan. 381, 321 P. 2d 171.)

Appellants next assert that this was an action for the recovery of real property or a determination of interest or rights therein as contemplated by G. S. 1957 Supp., 60-501, and that venue was therefore in Mitchell county, where the land mentioned in the contractual will was located.

As heretofore indicated, an action to set aside and cancel a contract on the ground of fraud, duress and coercion is an equitable action (*Houston v. Goemann*, 99 Kan. 438, 162 Pac. 271; *Dodd v. Boles*, 137 Kan. 600, 21 P. 2d 364; *Runyan v. Bangs*, 167 Kan. 691, 208 P. 2d 600; 12 C. J. S., Cancellation of Instruments § 2, p. 943; 9 Am. Jur., Cancelation of Instruments, § 3, p. 351) and operates not *in rem* but wholly *in personam* (12 C. J. S. Cancellation of Instruments § 1, p. 942).

Since an action for the cancellation of a contract is one *in personam* rather than *in rem*, it is necessary that jurisdiction of the person of defendant be acquired by personal service. Such action is properly brought in the county where the defendant or any one of several defendants may reside or may be served with summons and need not be brought in the county where the land which is the subject of the contract to be canceled is situated. An action on a contract is in its nature transitory, not necessarily local, and it is not material that the subject of the contract is realty if the title thereto is not drawn into question or the reality is only incidentally and not directly affected. (12 C. J. S. Cancellation of Instruments § 50, p. 1022; 9 Am. Jur., Cancelation of Instruments, § 53, p. 395; 56 Am. Jur., Venue, § 20, p. 23; § 21, p. 24; 92 C. J. S. Venue § 30a., p. 739.)

We have repeatedly held that where the judgment will operate upon the person of the defendant the action is considered to be

transitory rather than local, and the action may be brought wherever the person may be served with summons. (*Raynolds v. Row,* Case No. 41,377, this day decided, 184 Kan. 791, 339 P. 2d 358.) As mentioned, the Cloud county district court had personal jurisdiction of the parties to the action; and since this was an action to set aside and cancel a contract on the ground of duress and coercion and was, therefore, a transitory action, the Cloud county court had jurisdiction and venue of the case.

It is next contended that the court erred in overruling appellants' demurrers to plaintiff's evidence. Appellants introduced evidence on their own behalf after their demurrers were overruled and they did not renew the demurrers nor move for a directed verdict at the close of all the evidence in the case. Under such circumstances they waived their right to contend the evidence was insufficient to warrant submitting the case to the court. (*In re Estate of Rogers,* 184 Kan. 24, 334 P. 2d 830; *Ziegelasch v. Durr,* 183 Kan. 233, 326 P. 2d 295.)

Appellants contend the trial court erred: (1) In refusing their requested findings of fact and conclusions of law; (2) in making its findings of fact and conclusions of law, and (3) in overruling their motion to set aside those made by the court.

A careful examination of the record discloses that the trial court's findings of fact and conclusions of law were sufficiently sustained by the evidence, and the trial court did not err in refusing appellants' requested findings and conclusions or in refusing to set aside those made by the court. Other errors raised have not been overlooked. They have been examined and are held to be without substantial merit to warrant a reversal of the judgment rendered. The judgment of the lower court is affirmed.

It is so ordered.