Charles Margett, J.
Defendant Even Supply Corp. (hereafter movant) challenged this court’s jurisdiction over its person by motion pursuant to CPLR 3211 (subd. [a], par. 8). The court, on the authority of Feathers v. McLucas (15 N Y 2d 443, 458), held that plaintiff’s claim of jurisdiction cannot be supported by paragraph 2 of the so-called longarm statute — CPLR 302 (subd. [a]) — because the alleged tortious act occurred in an out-of-iState manufacturing process. A plenary hearing, however, was directed before Honorable Samuel S. Tripp, the Special Beferee of this court, with respect to the issues whether (1) movant, as alleged in the amended complaint, was doing business in New York when the accident occurred and (2) whether it then transacted any business in the State within the purview of CPLR 302 (subd. [a], par. 1).
After taking proof, the Special Beferee filed his report dated March 14, 1966 in which he recommended affirmative findings on both issues and that the motion be denied. The plaintiff has now moved to confirm said report. Although confirmation is unopposed, this court deems it appropriate to set forth in full relevant portions of the report since the disposition recommended therein, except for an unreported decision in the Fourth Department, appears to be of first impression in this State.
“ The movant was served with process in this action in New Jersey, in which State it was duly organized on or about September 22, 1954. All of its issued stock is owned by the defendant Harris-Ace [Welding Equipment Co., Inc., hereafter Harris-Ace], a New Jersey corporation organized on or about April 25,1950 under the name of Harris Service & Bepair Corp. On January 24, 1958, however, its name was duly changed to Harris-Ace. Both of these corporations have two officers in common — * Henry Soven, a vice-president, and Arthur Weiss, secretary — 'but only Harris-Ace had filed a certificate of doing business in New York State.
*64 “Plaintiff’s amended complaint, verified May 10, 1965, contains two canses of action for damages resulting from personal injuries, one in negligence and the other for breach of warranty. Plaintiff avers in paragraph ‘ sixth ’ of his amended complaint that he was in the employ of Chain Bike Corp., hereinafter referred to as ‘ Chain Bike ’, as a welder. In Paragraph ‘ seventh ’ it is alleged that he was injured on September 26, 1962, in the premises of his employer located in the Borough of Queens, City and State of New York, while he ‘ was changing an oxygen tank, pressure gauge and regulator ’ and that it was ‘ said pressure gauge [that] exploded, causing * * * [him] to sustain severe personal injuries ’. Paragraph eighth ’ alleges as follows:
" ‘ eighth : Upon information and belief, said oxygen tank, pressure gauge and regulator were designed, manufactured and sold by defendants, ametek, inc., u. s. gauge, inc., Harris calorific co. inc., and even supply corp. to defendant harrisace welding equipment co., inc. who then resold or leased said oxygen tank, pressure gauge and regulator to chain-bike corp., the employer of plaintiff, as aforesaid.’
* * *
“ The only witness at the hearing was Arthur Weiss, the . secretary of both the movant and Harris-Ace. He stated that two pressure gauges and a regulator comprised a unit which is sold in one sealed package eight by eight by eight inches in size. This equipment, manufactured in Cleveland, Ohio, by the defendant Harris Calorific Co., Inc., an Ohio corporation, was sold f. o. b. Cranford, New Jersey to Harris-Ace, through said manufacturer’s franchised dealer — Harris Calorific Sales Co., Inc., hereinafter referred to as Harris Calorific Sales, not named a defendant in this action.
“Mr. Weiss functioned with Harris-Ace as general manager ’ and with movant in a purchasing capacity ’ and sales too, in effect ’. He conceded that he had also been ‘ involved in the administration and sales duties ’ for Harris-Ace but never made any business trips to New York. He claimed that all Harris-Ace conferences were conducted in New Jersey and while it had a warehouse in Mt. Vernon, New York, when the accident occurred in September, 1962 and salesmen who operated in that State, it was not necessary for him to visit that warehouse or any other place in New York to inspect equipment or to repair it anywhere. He also claimed that none was movant’s property while stored in its parent’s Mt. Vernon warehouse and movant had nothing to do with selling it to ultimate customers *65 in New York; that the equipment purchased by movant and resold f. o. b. Cranford, New Jersey, to Harris-Ace was picked up by the latter’s truck, kept and registered in New Jersey and operated by its employees, or by one of its salesmen or directed to be sent Parcel Post or United Parcel.
“ At the present time, Harris-Ace maintains its New York quarters in Maspeth, Queens County, and shares its New Jersey quarters in Irvington with the movant. The latter never had any payroll or paid employees and its only office at the time the accident occurred was located in the home of Mr. Weiss in Springfield, New Jersey. At no time did it maintain any place of business, office, telephone listing, mail box, employees, property or bank account in New York, nor did its board of directors ever meet there. Its certificate of incorporation, however, was prepared by New York attorneys and executed in that State. Its only check account since incorporation was opened in May, 1962 with Union Center National Bank of Union City, New J ersey.
“ Normally, said Mr. Weiss, someone from Harris-Ace’s New York warehouse issued a verbal order for two or three specific items of which it was then short through somebody in its New J ersey office, and that this 1 somebody ’ might be he or any number of other people in that office; that he would then put on his ‘ other hat ’, write a purchase order from movant to Harris Calorific Sales in Cranford, New Jersey; that then movant would invoice the purchase to Harris-Ace in its New Jersey office with instructions to pick it up ‘ for transhipment or direct its shipment ’. He attested to the correctness of the following statement in his affidavit sworn to on July 29, 1965: ‘ The facts are that some time in late 1961 Q.r early 1962 Even Supply Corp. purchased an oxygen regulator and pressure gauge from defendant Harris Calorific Co., Inc., in New Jersey and shortly thereafter resold it to Harris-Ace Welding Equipment Co., Inc., in Irvington, New Jersey ’. When asked: ‘ How did it go about selling this equipment? ’ he answered: ‘ Simply by a transfer of paper work ’. In answer to the question whether he personally had anything to do with any shipment to Harris-Ace in New York, he answered: ‘ I wear many hats in that office. I am the shipping clerk and sometimes I do many other things. I am also a purchasing agent. I do lots of jobs there. I can’t tell ’.
* * *
“ The merits of the action are not presently involved. (Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443, 460.) The sole question posed is whether at the time of *66 the occurrence underlying this action, the movant was ‘ doing business ’ in New York in the traditional sense (CPLR 301, 313; Tauza v. Susquehanna Coal Co., 220 N. Y. 259) or at least was there an adequate showing of a cause of action arising from its transaction of any business in New York within the meaning of CPLR 302 (subd. [a], par. 1), notwithstanding that it had no employees, facilities or property in New York, but merely accepted from its sole customer, its parent corporation that was doing business in that State, orders for equipment which it placed in New Jersey with the manufacturer’s franchised dealer f. o. b. Cranford, there to be transshipped, at the direction of its parent with which it shared two officers and New Jersey quarters, to the latter’s New York warehouse or to its customers in that State via its New Jersey registered truck operated by its employees or Parcel Post, United Parcel or picked up by one of its salesmen. * # *
“Professor Joseph M. McLaughlin observed on page 48 of his 1965 Supplementary Practice Commentary, McKinney’s CPLR 302 [Yol. 7B] that: ‘ studied efforts of nonresidents to remain physically out of New York may be brought to nought where the end result of their out-of-state activity is a consciously sought performance in New York ’ and at page 53: ‘Unless the corporate wall between the manufacturer and subsidiary is to be breached on the theory that the subsidiary is being used as a hollow contrivance, it would appear that the plaintiff will be left without a mode of redress. ’ Such was the basis of the decision in Taca Int. Airlines v. Rolls-Royce of England (15 N Y 2d 97). There the Court of Appeals held that service of a summons on an officer of Rolls-Royce, Inc., a Delaware corporation, with an office and officers in New York City, and authorized to do business in this State, was sufficient service on the defendant Rolls-Royce of England, Ltd., because it was found that the latter was doing business here through its subsidiary, Rolls-Royce, Inc., which was no more than a separately incorporated department or instrumentality of the foreign parent corporation.
“ The question here presented is whether the movant was doing business here through its sole customer — its parent corporation— of which, at the time of the accident, it was a separately incorporated department or instrumentality. I am of the opinion that the answer should be in the affirmative, notwithstanding that here the situs of the two corporations, parent and wholly-owned subsidiary, was the reverse of that in Taca. The underlying principle, however, should cut both ways. Thus, on *67 September 24,1964 the Appellate Division of the Fourth Department in Serra v. Crystal Beach Co. (21 A D 2d 978) affirmed without opinion an order sustaining jurisdiction in personam over the defendant, a Canadian corporation, a 95% owned subsidiary of Crystal Beach Transit Co., Inc., a domestic corporation, which solicited business here for its subsidiary.
“ In Serra the defendant was organized under the laws of the Province of Ontario, Canada. Its only office for the transaction of business was at its amusement park in Crystal Beach, Ontario, where the infant plaintiff was injured. While the defendant solicited patronage for its Canadian amusement park of Western New York residents by advertisements in Buffalo newspapers and on the radio, it had never been authorized to do business in New York, where it owned neither real property nor any physical assets or bank account. Plaintiffs, however, rested their claim of jurisdiction mainly on the activities of the defendant’s New York parent corporation which consisted of arranging picnic outings from Western New York to Crystal Beach, Ontario, by groups, such as employees, unions, business associations and schools. The officers and directors of both corporations were essentially the same, but the affairs of both were conducted in their respective offices in New York and Canada. The contracts between the New York parent corporation and its customer groups in that State provided for access to the amusement devices and recreational facilities operated by its subsidiary in Canada. They were executed in the name of the parent corporation without mentioning its foreign subsidiary. Nevertheless, the courts found the subsidiary corporation subject to in personam jurisdiction in New York as to the cause of action in tort which arose at its establishment in Ontario.
“ Of course, mere ownership by the parent 1 of a majority or of even all the capital stock ’ of a subsidiary does not, in and of itself, render the latter an instrumentality of the former. There must be ‘ domination and control so complete that the [subsidiary] corporation may be said to have no will, mind or existence of its own and to be operated as a mere department of the business of the stockholder. (Berkey v. Third Avenue R. Co., 244 N. Y. 84 [1926]; United States v. Reading Co., 253 U. S. 26 [1920]; Rapid Transit Subway Construction Co. v. City of New York, 259 N. Y. 472 [1932].) ’ (Lowendahl v. Baltimore & Ohio R. R. Co., 247 App. Div. 144,154, affd. 272 N. Y. 360.)
“ Such is the case here. Upon the proof adduced movant, though nominally independent, actually functioned as a department of its sole customer, Harris-Ace, which concededly was *68 doing business in New York. The purchase and resale of equipment by subsidiary to parent was, in the words of the common secretary of both: ‘ Simply by transfer of paper work ’. When asked whether he had anything to do with the shipment of the equipment to the parent in New York, he answered: ‘ I am the shipping clerk and sometimes I do many other things. I am also a purchasing agent. I do lots of jobs there. I can’t tell ’. When a verbal purchase order would come in from Harris-Ace’s New York warehouse through somebody in its New Jersey office, that somebody might be he or any number of other people in the office. Then he testified: ‘ I would put on my other hat and write a purchase order from Even Supply to Harris Calorific in Cranford * * * and direct that the merchandise be held for pickup and at the same time I would simultaneously invoice from Even Supply to Harris-Ace Welding in Irvington and tell them to go pick up their merchandise ’.
‘11 therefore find that since the modern concept of doing business is a ‘ pragmatic one ’ (Bryant v. Finnish Nat. Airlines, 15 N Y 2d 426), movant was, in the circumstances here, ‘ doing business ’ in New York no less than its parent, so that the two causes of action upon which both are sued need not have stemmed from or have been connected with the business done here.
“ I also find, in response to the issue delineated in the order of reference, that movant transacted business in this State, within the meaning of paragraph 1 of subdivision (a) of CPLR 302 from which the two causes of action arose, through the activities of its sole customer, its parent corporation, which eoncededly did business here. The secretary of both corporations readily admitted that he was involved in the transaction alleged in paragraph eighth ’ of the amended complaint in connection with which he ‘ was acting for Harris-Ace Welding Equipment [the parent] and for Even Supply Corporation [the subsidiary] ’; that while he, personally, did not know that the regulator with gauges and an oxygen cylinder which he had examined at the United States Testing Laboratory in New Jersey had been tlte cause of the accident sued upon, these items were of the same type that movant had purchased for Harris-Ace, observing: There are many thousands of these regulators in the area. And we have sold some — we have sold some to Chain-Bike [plaintiff’s New York employer] * * * there is no way to identify this specific regulator.’ ”
The findings, views and recommendations hereinbefore set forth are adopted by the court and confirmed in all respects. The motion of the defendant Even Supply Corp. to dismiss the *69 complaint for lack of jurisdiction over its person is denied. Said defendant will have 10 days following the service of a copy of the order to be entered hereon with notice of entry thereof in which to serve .its answer.