No. 47,575

N. BUS FARHA, RAY R. FARHA, FLORENCE FARHA VANDERVORT, and JOSEPHINE FARHA RAZOOK, *Appellees,* v. SIGNAL COMPANIES, INC., a Delaware Corporation (Formerly Signal Oil & Gas Company); and SIGNAL PROPERTIES, INC., a Delaware Corporation, *Appellants.*

(532 P. 2d 1330)

472

Opinion filed March 1, 1975.

*Philip L. Bowman,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita, argued the cause, and *O. Otis Bakke,* of Gallman, Bakke and Schiwetz, of Houston, Texas, was with him on the brief for the appellants.

*Gerald Sawatzky,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

OWSLEY, J.: Plaintiffs, N. Bus Farha, Ray R. Farha, Florence Farha Vandervort, and Josephine Farha Razook, brought an action in the district court of Sedgwick County, Kansas, to recover the reasonable value of defendants' use and occupancy of a twenty-five acre tract of land in Texas. Defendants, Signal Companies, Inc., and Signal Properties, Inc., answered by challenging the *in personam* and subject matter jurisdiction of the Kansas court and asserting their ownership of the land by adverse possession. The trial court overruled defendants' motions to dismiss for lack of jurisdiction, and submitted to the jury the issues relating to the ownership of the property and the value of its use and occupancy. Defendants appeal from a judgment in favor of plaintiffs, awarding them $2,400 for the use and occupancy of plaintiffs' land.

Plaintiffs are all residents of the State of Kansas. Defendant Signal Companies, originally formed in 1928 under the name of Signal Oil & Gas Company, changed to its present name in 1968. Defendant Signal Properties, formed in December, 1969, is a wholly owned subsidiary of Signal Companies. Both Signal Companies and Signal Properties are Delaware corporations with their principal offices located in California. Personal jurisdiction over Signal Companies was based on the admitted transaction of business within

this state, but there was no showing that Signal Properties was ever engaged in business within the state or that it did any act within the state which would bring it within the scope of the Kansas long arm statute, K. S. A. 60-308 (now K. S. A. 1974 Supp. 60-308). Apparently, the trial court permitted the exercise of personal jurisdiction over Signal Properties on the theory that it had jurisdiction over the parent corporation.

Plaintiffs assert their ownership of the land by virtue of the passage of title by a number of mesne conveyances. The record indicates that in 1932, plaintiffs' family purchased one-half the minerals under this tract, and obtained an abstract of title. On July 11, 1936, Albert E. Hugg, the holder of a deed in the regular chain of title, gave a deed covering the remaining fee interest in the land to Rose A. Farha, plaintiffs' mother. In 1937, the land was conveyed to N. Bus Farha, who deeded said property in 1946 to plaintiffs' father, N. S. Farha. Upon N. S. Farha's death in October, 1964, a life estate interest passed to Rose A. Farha. She died on January 23, 1971, and the entire fee interest in the property passed to the plaintiffs.

The property in question is a twenty-five acre tract of unimproved land located near Houston, Texas. The Farhas originally purchased the land as a long term investment and for possible oil and gas returns. The record reveals that the Farhas' tract was located in the middle of more than five hundred acres of range land owned by Milby Butler. Over the years, Butler had succeeded in fencing in all his land to contain cattle. The Farhas' tract was never separately fenced and several witnesses testified the cattle would also use that land for grazing from time to time.

In 1955 the Farhas leased the tract to Sohio Petroleum Company for a period of several years at substantial compensation. In addition, the Farhas paid all the taxes assessed on the property from the date of the original purchase in 1936.

Defendants offered evidence tending to show the Farhas had rarely visited the property after they bought it. The first time any of the family was on the property was in late 1939, at which time N. Bus Farha spent approximately one hour on the land. After that visit only four or five trips were made by members of the Farha family to the Texas property. Plaintiffs testified that when they did visit the property they talked with Milby Butler and he voiced no objection to their being on the land. In January, 1965, N. Bus

Farha and his brother, Ray Farha, made a trip to the Texas land. At that time Butler indicated he thought he owned the twenty-five acre tract and he attempted to offer the Farhas one-half the minerals if they would give up their interest in the property. The Farhas testified they made it clear to Butler that they would not accept such a deal.

In late 1923, Milby Butler entered onto part of a tract of land known as the Chinaberry Pasture. The Chinaberry Pasture included the tract owned by the Farhas, as well as other lots in areas referred to as the Jensen Colony and John Dickinson Survey. Although there were some fences in existence which fenced out other pastures, Butler created an enclosure around his land by fencing the unenclosed sides soon after he purchased the land. Although Butler had no record title or color of title to the twenty-five acre tract, there was substantial evidence that the entire tract, including the land in question, was used as part of Butler's cattle ranching operations at various times over the years. There was also evidence that on different occasions through 1935 or 1936 Butler planted crops on five to ten acres of the Farhas' land. In 1947 a canal was put through the property and for a few years Butler leased his land, along with the Farhas' acreage to a rice farmer. Whether any rice was harvested from the twenty-five acres does not appear in the record.

When the Farhas learned their land had been planted to rice, they wrote Butler and offered to let him use the land for the usual crop rental. Receiving no response from their letter, the Farhas commenced a trespass action in the Texas district court in 1948. Butler defended the action by asserting he was the true owner of the property, having acquired title by adverse possession. This action was later nonsuited by the Farhas and dismissed without prejudice, ostensibly for the reason no further rice was planted and they wanted to avoid further legal costs. Another such action was filed by the Farhas in 1950, but it, too, was later dismissed for lack of prosecution.

When the Farhas attempted to pay the taxes on the property in 1968, they learned that Signal Oil & Gas Company had already paid the taxes. Almost three years later, they obtained a supplemental abstract of title and learned for the first time that on December 31, 1964, Milby Butler had deeded a tract of more than five hundred acres to Signal Oil & Gas Company, which deed purported to include the Farhas' property. At the same time the

Farhas discovered that Signal Oil & Gas Company had changed its name to Signal Companies, and that Signal Companies had conveyed the same five hundred acre tract to a newly formed subsidiary, Signal Properties. Signal Companies had originally acquired the land for purposes of residential or commercial development, but, pending development, Signal Companies leased the land in 1965 to a farmer who grew rice and grazed cattle on parts of the whole tract.

On December 2, 1971, plaintiffs filed suit in Sedgwick County, Kansas, to recover the reasonable value of Signal Properties' and Signal Companies' use of the land. Defendants thereafter moved to dismiss the action, or for a stay. Their original answers denied liability, denied that plaintiffs were owners, and claimed ownership in Signal Properties.

On February 11, 1972, Signal Properties filed a trespass action in the district court of Galveston County, Texas, (subsequently removed by the Farhas to federal district court) claiming it had title by adverse possession. Signal Properties then moved in the federal district court for an injunction against the plaintiffs' Kansas action. Upon issuance of the injunction, plaintiffs herein appealed to the Circuit Court of Appeals, which reversed and vacated the lower federal court's injunction, thus clearing the way for the Kansas action to proceed. (*Signal Properties, Inc. v. Farha*, 482 F. 2d 1136 [5th Cir. 1973].)

After the trial, the jury entered a general verdict for plaintiffs, awarding them $2,400 for the value of defendants' use of the Farha land. Defendants raise nineteen points on appeal, which we have consolidated for the sake of clarity.

Initially, we must determine whether a Kansas court has subject matter jurisdiction over Texas land in a suit brought by a Kansas resident to recover for the use and occupancy of land when the defendant claims ownership by adverse possession. The answer depends on whether the action is local or transitory in nature, for it is generally recognized that local actions must be brought in the state where the land is situated; whereas, transitory actions may be instituted wherever the defendants may be found, even though lands lying outside the jurisdiction of that court may be affected by the decree. (*Massie v. Watts*, 6 Cranch 148, 3 L. Ed. 181 [1810].) In this state we have declared that whether a cause of action is deemed to be local or transitory depends on the pleadings and relief sought. Where the decree sought would act upon

the person of the defendant, rather than upon the real property, the location of the land indirectly affected is immaterial and the action is considered to be transitory. (*Raynolds v. Row*, 184 Kan. 791, 339 P. 2d 358.)

Defendants argue that although the form of action brought by plaintiffs was superficially pled as one to recover for the use and occupancy of land, in actuality the controlling issue was whether title passed to defendants by adverse possession. They contend plaintiffs brought the issue of title into the Kansas court when they alleged in their petition that they were owners of the land. When defendants answered by claiming title to the property by virtue of a conveyance by one who had acquired title by adverse possession, the controlling issue became one of title. If the suit were in the nature of an action to try title, there would be little doubt that it was a local action which would have to be brought in the state and county where the property is located. Defendants attempt to support their theory by citing numerous Texas cases which hold that actions to try title are local in nature and must be brought in the county where the land is located.

The fallacy in defendants' argument arises from their conclusion that plaintiffs' suit was in the nature of a title action and not one to recover for the use and occupancy of land. In this state it is well established that the right to recover for use and occupancy of land is permitted by statute (K. S. A. 58-2520).

Defendants' brief overlooks the recent pronouncement of the Circuit Court of Appeals in the case of *Signal Properties, Inc. v. Farha,* supra. That decision vacated a federal district court injunction against the Farhas' prosecuting the instant action, based on the ruling that such an injunction was not in aid of the federal court's jurisdiction and was thus barred by the anti-injunction statute, 28 U. S. C. A. § 2283. Although the majority opinion stated that no question was raised as to the Kansas court's personal or subject matter jurisdiction, the court recognized the well-settled rule that a decree *in personam* is binding upon the person of a defendant, and may result in a determination of the rights of that person in property located in another state or within the custody of another court:

"A court may properly adjudicate rights in property in the possession of another court and may render any judgment 'not in conflict with that court's authority to decide questions within its jurisdiction and to make effective such decisions by its control of the property.' . . ." (p. 1137.)

The court reasoned that the Texas courts had *in rem* jurisdiction over the land at issue, whereas the Kansas action was *in personam.* As such, the Kansas suit could not result in any judgment or decree which would interfere with the constructive possession of the federal court:

"While such title issues as are first determined by the Kansas court may become binding on the parties to the Texas District Court action under the doctrines of res judicata or collateral estoppel if properly set up by plea in the latter court, the mere act of resolving those disputed issues which are common to both proceedings in Kansas will not disturb the Texas District Court's constructive possession or control of the land. An irreconcilable conflict between the state and federal judiciaries would only arise if both sought to exercise authority to dispose of the same *res.* . . ." (p. 1137.)

The majority opinion refused to accept the ruling of the lower federal court that the Kansas suit was brought to try title to the property.

This court has also recognized the same principles in similar circumstances. In *Bankers Mortgage Co. v. Robson,* 123 Kan. 746, 256 Pac. 997, the defendants challenged the jurisdiction of the district court of Ellsworth County, claiming an interest in real estate was involved and that the action could only be brought in Jewell County, where the property was situated. The court said an action to recover money as rent for the use of real property is a transitory one, and the fact that an inquiry may incidentally arise as to the ownership of the property does not change the nature of the action or give it the character of a local action:

". . . It was not one to try the title to real property or to quiet title or to determine an interest therein, nor could any judgment affecting the real estate be rendered in the action. All that could be determined was the liability of the defendants for the rentals that had accrued, and the court rightly overruled the challenge of its jurisdiction." (p. 749.)

Likewise, in *Raynolds v. Row,* supra, and in *Roberts v. Cooter,* 184 Kan. 805, 339 P. 2d 362, this court recognized that not every action growing out of transactions concerning real property is local. In *Roberts* an action on a contract was held to be transitory in nature, despite the fact the subject of the contract was realty which was indirectly affected.

A similar statement of this priciple can be found in 56 Am. Jur., Venue, § 11, p. 14, wherein the editor states:

". . . [I]n order to give a court jurisdiction under such a statute, on the ground that title to real estate is involved, it must appear as a general rule that the title will be directly affected by the judgment of the court; and

it will not suffice for it to be incidentally, collaterally, or even necessarily inquired into if the judgment can be satisfied by the payment of money. . . ."

An early expression of this same principle was made by the United States Supreme Court in *Massie v. Watts*, supra, where Mr. Chief Justice Marshall stated:

". . . [W]here the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of *mala fides* practised [sic] on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found, and the circumstance, *that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction*." (p. 158.) (Emphasis added.)

In *Sheppard v. Coeur D'Alene Lumber Co.*, 62 Wash. 12, 112 Pac. 932, the court held under similar facts that an action for use and occupancy is transitory and may be maintained in a county or state other than where the land is located, despite the defendant's claim to ownership of the land by adverse possession. The action for the value of the use and occupancy was brought in Washington by the record owners of land located in Idaho. The defendant claimed title by adverse possession. The court upheld the jurisdiction of the Washington court, saying:

". . . We do not think the action affects the title to the property within the meaning of the statute. The purpose of the action is to recover a money judgment for a reasonable value of the property. In other words, the action is for the breach of an implied contract. Under the averments of the complaint, the respondents are tenants by sufferance and liable for the reasonable rental value. The fact that the answer sets up title in the respondent, and brings the title incidentally into issue, does not make the action a local one. . . ." (p. 14.)

In a more recent case, *Silver Surprize v. Sunshine Min. Co.*, 74 Wash. 2d 519, 445 P. 2d 334, the plaintiff commenced an action in a Washington court for damages from the breach of a contract relating to certain mining lands in Idaho. The defendant answered by alleging his ownership of the premises through adverse possession. The Washington Supreme Court, in reversing the dismissal of the lower court for lack of jurisdiction, said:

"Jurisdiction is not a light bulb which can be turned off or on during the course of the trial. Once a court acquires jurisdiction over an action it retains jurisdiction over that action throughout the proceeding. . . . Neither can the defendant by his answer destroy the jurisdiction of the court once attained. . . . If the converse of this were true, it would be within the

power of the defendant to preserve or destroy jurisdiction of the court at his own whim." ( p. 523. )

Applying these standards to the instant case, we conclude the Kansas court had subject matter jurisdiction of the transitory cause of action brought by plaintiffs to recover for defendants' use and occupancy of the Texas land.

Having determined the court had subject matter jurisdiction, the question arises as to whether the Kansas district court had jurisdiction over the person of Signal Properties. Plaintiffs rely upon the Kansas long arm statute, K. S. A. 60-308 ( *b* ) ( 1 ), for the exercise of jurisdiction over Signal Properties, based on the alleged transaction of business within the state. Due process requires that in order to subject a defendant to a judgment *in personam* if he be not present within the forum state, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. ( *Internat. Shoe Co. v. Washington,* 326 U. S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A. L. R. 1057; *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 528 P. 2d 1248. )

In the case before us defendant Signal Companies does not challenge the finding of the trial court that it was transacting business within the state. The sole issue is whether Signal Properties, a wholly owned subsidiary, was also within the ambit of the long arm statute by virtue of its relationship with Signal Companies. The plaintiffs were unable to show any evidence of business being transacted in Kansas by Signal Properties. There was no showing that Signal Properties ever entered into a contract to be performed within the state or owned land within the state. Yet, plaintiffs contend the Kansas court can obtain jurisdiction over Signal Properties by "piercing the corporate veil," and ruling that Signal Properties was a mere instrumentality of its parent corporation without any separate corporate existence.

The law is clear that mere ownership of all the stock of a subsidiary will not, in and of itself, subject the parent corporation to the jurisdiction of the state where the subsidiary is doing business. The test is whether the local corporation's identity as a distinct corporate entity is observed. ( *Cannon Mfg. Co. v. Cudahy Co.,* 267 U. S. 333, 69 L. Ed. 634, 45 S. Ct. 250. ) Numerous cases have extended jurisdiction over a foreign parent corporation based on the contacts of the domestic subsidiary with the forum state.

(*ACS Industries, Inc. v. Keller Industries, Inc.,* 296 F. Supp. 1160 [D. Conn. 1969]; *State v. MacPherson,* 62 N. M. 308, 309 P. 2d 981; *Volkswagen Interamericana, S. A. v. Rohlsen,* 360 F. 2d 437 [1st Cir. 1966]; *Boryk v. de Havilland Aircraft Co.,* 341 F. 2d 666 [2d Cir. 1965]; *Dam v. General Electric Co.,* 111 F. Supp. 342 [E. D. Wash. N. D. 1953]; *Taca Int. Airlines v. Rolls-Royce, Eng.,* 21 App. Div. 2d 73, 248 N. Y. S. 2d 273, resettled 252 N. Y. S. 2d 395; See, 104 Pa. Law Rev. [1955], Jurisdiction Over Foreign Corporations—An Analysis of Due Process, p. 381; See also, 18 A. L. R. 2d Anno., § 6, p. 198, and Later Case Service.)

The reasoning of the courts which have extended jurisdiction over the foreign parent corporation on the basis of the domestic subsidiary's "presence" within the state, is that when a corporation exercises such control and domination over its subsidiary that it no longer has a will, mind, or existence of its own, and operates merely as a department of the parent corporation, both corporations should be treated as a single economic entity. Thus, service of process on the subsidiary operates to extend jurisdiction over the parent. Most of these cases recognize the basic injustice of allowing the parent to escape jurisdiction solely because of the utilization of a separate corporation to carry on and further its business activities in the forum state. We are faced with the alternate situation where the exercise of jurisdiction over the subsidiary is based on the "presence" of the parent corporation within the forum state.

Defendants claim the trial court erred in ruling Signal Properties was a mere "instrumentality" of Signal Companies and not a separate and distinct entity. Defendants point out that Signal Properties has its own officers and its own board of directors which meet regularly. They rely on the case of *Henry v. Offshore Drilling (W. A.) Pty., Ltd.,* 331 F. Supp. 340 (E. D. La. 1971), to support their contention. In *Henry* the injured employee of the parent corporation sought to sue the foreign subsidiary based on the jurisdictional contacts of the parent. Although the corporate identities had not been kept separate the court held the subsidiary was not subject to jurisdiction in the forum state. The court recognized the general rule that a parent corporation may be subject to domestic jurisdiction through the contacts of its subsidiary, but refused to rule that the converse was true; *i. e.,* that a foreign subsidiary may be subject to the jurisdiction of a state with which it has no connection other than the contacts of its parent. Accord-

ing to the reasoning of the court, a foreign subsidiary is subject to jurisdiction only in a case in which the subsidiary exercises a certain degree of control over the parent corporation, and where the parent can be said to have acted as an agent of the subsidiary. The holding of the court was limited to the following:

".  .  .  [A] foreign subsidiary is not amenable to local jurisdiction in the capacity of a *principal* unless it 'purposefully avails itself of the privilege of conducting activities within the forum State' through direction of its local parent. Hanson v. Denckla, 357 U. S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)." (p. 343.)

The facts in *Henry* are similar to the instant case. Although plaintiffs emphasize the fact the parent corporation was not a party defendant, we attach no significance to that fact. Despite the similarity of the cases we disagree with the holding expressed in *Henry*. Specifically, we find no justification for requiring the subsidiary to exercise control over the parent before jurisdiction over the foreign subsidiary is obtainable.

We agree with Restatement, Second, Conflict of Laws, § 52, (Comment *b*), pp. 180, 181, wherein the following is stated:

".  .  .  [J]udicial jurisdiction over the parent corporation will give the state judicial jurisdiction over the subsidiary corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence."

In accord with this rule is the case of *Gonzales v. Ametek, Inc.,* 50 Misc. 2d 62, 269 N. Y. S. 2d 616. The question in this case was whether the foreign subsidiary was doing business in the State of New York through its sole customer, the parent corporation. The New York Supreme Court answered the question in the affirmative, in spite of the fact it was the parent corporation which was transacting business within the state and not the subsidiary. In the opinion of the New York court, the underlying rationale for the "alter ego" principle should "cut both ways." Accordingly, the court held there was jurisdiction over the foreign subsidiary by virtue of the parent corporation's contacts with the state.

Similarly, the court held in *Frazier, III v. Alabama Motor Club, Inc.,* 349 F. 2d 456, (5th Cir. 1965), that although defendant subsidiary corporations were incorporated elsewhere, they were not separate corporate entities and the appearance of corporate autonomy was superficial. Based on this finding, the court held the subsidiaries were doing business in the state where the parent corporation was incorporated.

The decision in *Public Admin. v. Royal Bk. of Canada,* 19 N. Y. 2d 127, 224 N. E. 2d 877, is in line with those cases extending jurisdiction over the foreign subsidiary when the entire corporate enterprise acts as a single economic entity. A French subsidiary corporation was held to be doing business in New York by virtue of its activities for the parent corporation. The court reasoned there was virtually no attempt to treat the French corporation as a separate entity and the sole reason for its separate incorporation was to avoid the French tax on the entire capitalization of foreign banks which operated in that country.

There is no sound reason for not applying the "alter ego" doctrine where the foreign corporation is the subsidiary and the forum court has jurisdiction over the parent corporation. In either case each corporation is part of the whole and both serve the same economic entity. As pointed out by the court in *State v. MacPherson,* supra, when jurisdiction is exercised over the subsidiary through the parent there is no longer the danger that a corporation may be drawn into litigation in a strange forum by the acts of someone relatively unfamiliar with its major policies and unimportant in its corporate hierarchy.

Measured by these principles the instant case clearly justifies treating the Signal enterprise as a single economic entity. Prior to the formation of Signal Properties, Signal Oil & Gas Company engaged in the purchase and sale of real estate as part of its business enterprise. It continued to deal in real estate after its name was changed to Signal Companies in 1968. When Signal Properties was formed in 1969, the new subsidiary ostensibly took over operation of the real estate portion of the enterprise from the same headquarters. Effective December 31, 1969, lands described in the Butler deed to Signal Companies, as well as other land, were conveyed by an indenture to Signal Properties as a contribution to capital.

After the transfer of the real estate to Signal Properties, the parent company continued to supply the funds for further real estate acquisitions. From the depositions of various Signal officials it was established that notes which Signal Properties gave to its parent corporation would not have a due date, and that the subsidiary was limited by the parent as to the amount for which it could encumber its assets. Both corporations operated from the same headquarters and filed under the same tax return. The financial aspects of both corporations were reported together and the

parent was liable for the debts of the subsidiary. It was demonstrated that Signal Properties was staffed by several former employees of Signal Companies. Despite the separate incorporation, defendants admitted the financial matters of the subsidiary had to be cleared with and approved by the parent.

These facts clearly disclose the Signal business enterprise continued to operate as a single economic entity after the incorporation of Signal Properties. Signal Companies exercised complete and ultimate control over the business policies of its subsidiary. Under such conditions we must conclude Signal Properties was operated as a mere instrumentality of the parent corporation. We agree with the finding of the trial court that there was *in personam* jurisdiction over defendant Signal Properties.

Since there can be no question the Signal enterprise had sufficient contacts with this state, the extension of jurisdiction over a mere instrumentality of the single economic unit would not offend the due process standards as expressed in *Internat. Shoe Co. v. Washington,* supra.

Defendants next claim the trial court erred in overruling their motions to dismiss under the doctrine of *forum non conveniens.* They cite *Gonzales, Administrator v. Atchison, T. & S. F. Rly. Co.,* 189 Kan. 689, 371 P. 2d 193; *Gulf Oil Corp. v. Gilbert,* 330 U. S. 501, 91 L. Ed. 1055, 67 S. Ct. 839; and *Hayes v. Chicago, R. I. & P. R. Co.,* 79 F. Supp. 821 (D. Minn. 1948), in support of their motions. Although defendants have not emphasized this point we have carefully reviewed each of these cases. They support the rule that in order to justify a reversal of a trial court's decision it must be found there has been an abuse of discretion. It has been recognized that the doctrine is not applicable where one of the parties is a resident of the state. It has also been held that the doctrine is usually applied to tort actions between nonresidents concerning a tort in another state, and is not usually applied to contract actions. (20 Am. Jur. 2d, Courts, § 172, 177, 178.) Since this is a contract action in which the several plaintiffs are residents of the State of Kansas we cannot say the trial court abused its discretion.

Defendants claim the court erred in instructing the jury (No. 4) that occupancy of premises by one person, in the absence of an agreement or circumstances indicating a contrary intent, implies an agreement to pay the reasonable value for use and occupancy of the premises. Defendants argue that at common law a tenant at sufferance was not liable to the owner for the use and occupancy

of property. Since the right to recover for use and occupancy in Texas is limited to a Texas procedure known as an action for trespass to try title (Tex. Rev. Civ. Stat. Anno., Art. 7389), and such procedure is local (Art. 1995, Sec. 14), the action can only be maintained where the land is located. This argument fails to recognize there is no provision in the Texas statutes limiting the right to recover for the use and occupancy to an action for trespass to try title. In *Lazarus v. Phelps*, 152 U. S. 81, 38 L. Ed. 363, 14 S. Ct. 477, in an independent action to recover for the use and occupancy of Texas lands, it was said that where the facts show an intent by defendant to avail himself of the pasturage of plaintiff's lands, the law raises an implied promise to pay for such use and occupancy of the lands by him. Since *Lazarus* permits an independent action for use and occupancy, it follows that the common law rule that a tenant at sufferance is not liable for use and occupancy, has been abrogated in Texas. We need only add that an action to recover for the use and occupancy is transitory as previously concluded herein.

Defendants also claim error in the trial court's instructions relating to the issue of adverse possession. They favor us with a reproduction of several of the involved Texas statutes. We have examined these statutes, along with the Texas cases cited by both parties, and have tested them against the instructions given by the trial court. We conclude the adverse possession instructions given are in accord with the law of Texas except as to the one matter next discussed.

While we agree the trial court misconstrued the Texas law when it instructed the defendants had the burden to prove "[t]hat Butler cultivated and used for agricultural purposes at least 1/10 of the 25 acres in question continuously for ten consecutive years," we do not believe the error was prejudicial. Under Texas law it was not incumbent upon defendants to prove the foregoing, but it was their burden to establish the essential elements of adverse possession. (*Smith v. Bradshaw*, 93 S. W. 2d 468 [1936].) Since the jury specifically found defendants failed to establish adverse possession (answers to special interrogatories Nos. 2 and 3), the erroneous instruction became immaterial.

Defendants also contend the jury was guilty of misconduct in using a quotient method in arriving at their verdict. Conflicting affidavits were filed by the parties on the issue of whether there was an advance agreement among the jurors to accept the quotient

figure. Where there is supporting evidence, although conflicting, we are not warranted in disturbing the finding of the trial court. (*Blevins v. Weingart Truck & Tractor Service*, 186 Kan. 258, 349 P. 2d 896.)

Defendants question whether N. Bus Farha's testimony that the plaintiffs wanted $100.00 per month for the use of the land can be a basis for establishing the reasonable value of the use. Even if we agreed with defendants that this testimony was objectionable to establish value, we are satisfied there is sufficient evidence in the record to support the jury's verdict.

The judgment of the trial court is affirmed.