NOT DESIGNATED FOR PUBLICATION

No. 122,796

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MID KANSAS AGRI CO.,
*Appellee/Cross-appellant*,

v.

PAWNEE COUNTY COOPERATIVE ASSOCIATION,
*Appellant/Cross-appellee*.

MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed February 25, 2022. Affirmed.

*Adam R. Burrus* and *Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant/cross-appellee.

*Charles D. Lee* and *Myndee M. Lee*, of Lee Law LLC, of Overland Park, *Kyle W. Malone*, of Stinson LLP, of Wichita, and *Micah Schwalb*, of Roenbaugh Schwalb, of Boulder, Colorado, for appellee/cross-appellant.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

PER CURIAM: Pawnee County Cooperative Association (the Co-op) appeals from a jury verdict awarding damages to Mid Kansas Agri Co. (Mid-Kan) for claims based on fraud and breach of contract. The Co-op argues: (1) The district court's judgment is void because the matter should have been heard in Barton County based on the local venue requirement of K.S.A. 60-601; (2) the district court erred in admitting testimony from Mid-Kan's expert witness; (3) the district court erred in denying the Co-op's motion for

1

judgment as a matter of law on the fraud claim; and (4) the jury's verdict on Mid-Kan's breach of contract claims was contrary to the evidence at trial. Mid-Kan cross-appeals, arguing the district court erred in admitting damages testimony on the Co-op's counterclaim; therefore, the jury should not have been instructed on the counterclaim. Upon an extensive review of the record, we find no error by the district court. We affirm.

FACTS

Mid-Kan owned a grain storage facility in Dundee. The Co-op is involved in grain storage, agricultural marketing, and other related business on behalf of its members. The Co-op relies on a number of facilities in Pawnee County and surrounding counties to store grain and other crops for its members. In 1997, Mid-Kan contracted with the Co-op to store grain at the Dundee facility. Over the years the lease was modified, but none of the revisions affected the two clauses at issue here.

The lease agreement's long term storage (LTS) provision and the right of first refusal (ROFR) provision have remained unchanged as the record on appeal reflects. The LTS provision provided:

> "It is the intent of both parties that this facility will provide long term storage [to the Co-op]. Therefore unless necessary to make room for upcoming crops and upon mutual agreement, [the Co-op] will not issue shipping orders until [all] other options are exhausted including [the Co-op's] storage facilities or terminal stored grain."

The ROFR provision provided: "[Mid-Kan] shall have a first right of refusal, at the same offered price and terms, to purchase any grain that the [Co-op] merchandises from the [Mid-Kan] facility." The agreement also contained a provision for shrinkage, or loss as a result of a change of moisture content in the stored grain. It was expected any loss of moisture in storage would be less than or equal to one percent. For shrinkage up to

2

one percent, the loss would be split one-third to the Co-op and two-thirds to Mid-Kan. Any shrinkage in excess of one percent was solely Mid-Kan's responsibility. The Co-op paid Mid-Kan to store grain on a per-bushel basis, meaning the more grain stored at the Dundee facility, the greater Mid-Kan's revenue. In the event the Co-op needed to move grain out of the facility, it was expected to replace it to the fullest extent possible.

In December 2012, the Co-op was notified by its own private auditor as well as a federal grain examiner that the measured amount of grain in storage at the Dundee facility was less than what was reflected in the Co-op's storage records. The discrepancy was approximately 50,000 bushels. The Co-op's general manager, Hugh Mounday, contacted Glenn Mull, the coowner of Mid-Kan, to tell him the Co-op believed there was a loss of grain based on shrinkage and Mid-Kan was responsible for approximately $260,000 as a result of the loss. Mid-Kan's other coowner, Bill Roenbaugh, attempted to investigate whether there was any shrinkage but could not find any records indicating the moisture content of the grain when it was delivered. The parties subsequently agreed to offset any shrinkage loss against rent the Co-op owed to Mid-Kan. The offset was completed in January or February 2013.

Mull died in early 2014, and Roenbaugh purchased Mull's interest in Mid-Kan from Mull's estate. The parties' relationship began to deteriorate around that same time. There were a variety of issues at the Dundee facility that caused the Co-op to move some of its grain from the facility because the Co-op did not think the grain in storage was being properly managed to maintain its quality. According to Mounday, Roenbaugh approached him in February 2014 to amend the terms of the lease. The purpose of the 2014 lease amendment was to (1) extend the lease to December 31, 2020, (2) allocate loss for shrinkage evenly between the parties, and (3) increase the Co-op's minimum rent to $100,000 per year. But the amendments are irrelevant to the issues on appeal because the LTS and ROFR provisions remained unchanged, and any issues with shrinkage arose in December 2012.

In June 2018, Mid-Kan demanded the Co-op remove its grain from the Dundee facility and vacate the premises by July 30, 2018. The Co-op refused to do so on the basis it believed it had the right to use the facility until at least the end of 2019. On July 27, 2018, Mid-Kan filed suit against the Co-op in Pawnee County, asserting claims for fraud and breach of contract. The Co-op filed an answer denying Mid-Kan's claims, asserting affirmative defenses of statute of limitations and waiver or equitable estoppel, and further asserting its own counterclaims. Specifically, the Co-op asserted Mid-Kan breached the terms of the parties' agreement by refusing to accept grain shipments from the Co-op after Mid-Kan filed its petition. But prior to the Co-op filing its answer, Mid-Kan sought an emergency order to bifurcate the proceedings in order to evict the Co-op from the Dundee facility. The district court denied Mid-Kan's motion, finding it was premature to consider whether the Co-op should be evicted until there was a determination on the breach of contract claims.

Mid-Kan also unsuccessfully filed a separate suit in Pawnee County, seeking an order to grant Mid-Kan possession of the facility and a writ of restitution. The district court ultimately dismissed the other case in its entirety, finding all claims by the parties were identical in substance to those presented in this case. Mid-Kan then renewed its motion to bifurcate the proceedings. The Co-op objected to Mid-Kan's motion and further moved for a change of venue to Barton County, asserting Mid-Kan's request for eviction implicated the Co-op's leasehold interest in real property; therefore, the matter had to be filed in the county where the property was located. The district court denied both parties' motions, finding the case was "principally a breach of contract action." Effectively, the district court held any claim for eviction or ejectment could be subsequently addressed in Barton County if the jury found the Co-op breached the parties' agreement.

Prior to trial, Mid-Kan designated Dr. Matthew Roberts as its expert witness to testify about Mid-Kan's damages from violations of the ROFR provision. The Co-op moved to exclude Dr. Roberts' expected testimony on the basis any damages calculation

4

was speculative because Mid-Kan never bought or sold grain for hedging purposes as part of its normal business practices. The district court denied the Co-op's motion, finding there was no serious dispute as to Dr. Roberts' qualifications as an expert witness. The district court found Dr. Roberts' testimony would be relevant to assist the jury in determining Mid-Kan's damages if it found the Co-op breached the ROFR provision. The district court noted the Co-op engaged in the complicated process of grain hedging as part of its own practice in purchasing grain. Therefore, it concluded: "Because of its own business process, [the Co-op] cannot successfully maintain that the calculation of profit contained within [Dr. Roberts'] opinion could not have been contemplated by the parties with respect to the right of first refusal."

Thereafter, a pretrial order was entered indicating Mid-Kan's contentions and theories of recovery as follows:

- The Co-op refused to allow Mid-Kan to purchase grain under the ROFR provision, depriving Mid-Kan of the opportunity to profit from grain storage and marketing strategies;
- The Co-op failed to use the Dundee facility as a long-term storage facility in violation of the LTS provision, thereby depriving Mid-Kan of rental income; and
- The Co-op improperly recorded moisture levels for grain transferred into the Dundee facility and wrongfully demanded payment from Mid-Kan for purported shrinkage.

The Co-op denied Mid-Kan's claims and asserted Mid-Kan waived its rights under the LTS and ROFR provisions because it was aware the Co-op was moving grain out of the facility for sale and did not object. The Co-op further asserted Mid-Kan's demand for restitution based on the 2012 shrinkage loss was barred by the statute of limitations. The Co-op also asserted a counterclaim for Mid-Kan wrongfully attempting to terminate the

lease agreement in June 2018, which caused the Co-op to incur increased costs storing grain elsewhere and decreasing the total amount of grain it could store.

At trial, Mid-Kan presented evidence from an expert witness, Thomas Copley, regarding Mid-Kan's damages from the Co-op's alleged breaches of the LTS provision. Based on Copley's review of the Co-op's inventory records from January 2014 through August 2018, Copley determined there was a significant volume of grain removed from the Dundee facility, which could have been taken from other facilities the Co-op used for storage. Copley concluded the Co-op's breaches of the LTS provision resulted in Mid-Kan losing $2,294,368 in storage fees. The Co-op did not object to Copley's testimony and offered no rebuttal evidence.

Dr. Roberts testified regarding Mid-Kan's damages from the Co-op's alleged breaches of the ROFR provision. Despite its pretrial objection, the Co-op did not renew its objection prior to or during Dr. Roberts' testimony. Dr. Roberts concluded Mid-Kan's damages were $1,665,304 for the Co-op's breaches of the ROFR provision. Dr. Roberts reviewed relevant Co-op financial documents and identified 597 contracts the Co-op entered into to sell grain during the duration of the lease. He determined 92 of those contracts could have been fulfilled with grain delivered from the Dundee facility and were, therefore, subject to the ROFR provision. Of those 92, Dr. Roberts identified 59 contracts where Mid-Kan could have profited by exercising its right of first refusal given the market conditions at those times.

Roenbaugh testified the Co-op never offered Mid-Kan the opportunity to purchase any grain it moved out of the Dundee facility. According to Roenbaugh, the Co-op never notified Mid-Kan of the terms of sale for any of the grain it sold out of the Dundee facility. Roenbaugh believed any of the grain the Co-op had shipped out of the Dundee facility was because it needed to do so to make room for upcoming crops as permitted by the lease agreement. By 2017, Roenbaugh noticed the amount of grain the Co-op was

6

storing at the Dundee facility fell off dramatically, meaning the Co-op was taking grain out and not returning anywhere near the same amount. At this point, Roenbaugh believed the Co-op was in breach of the LTS provision.

With regard to the Co-op's 2012 shrinkage claim, Roenbaugh initially thought the shortfall must have been the result of theft. Mid-Kan had security cameras installed at the facility and even contacted law enforcement but never found any signs of theft. Mid-Kan reluctantly allowed the Co-op to offset the shrinkage loss against the rent it owed but asked the Co-op for records about the moisture content of the grain. According to Roenbaugh, he asked the Co-op for information multiple times to no avail. It was not until Mid-Kan received discovery related to the LTS provision that Mid-Kan learned the Co-op never checked the moisture content of their grain prior to bringing it to the facility.

At trial, Mounday admitted the Co-op had not tested the grain for moisture content before delivering it to the facility. The Co-op's CFO, Kim Barnes, also admitted the Co-op did not know the moisture content of the grain when it was delivered. In support of the Co-op's counterclaim, Barnes testified the Co-op was unable to store 700,000 bushels of grain it otherwise would have stored at the Dundee facility in 2018 and 2019. Based on the Co-op's historic profit margin, Barnes believed this resulted in a loss of $280,000 based on Mid-Kan's refusal to accept the Co-op's grain after June 2018.

At the close of Mid-Kan's evidence, the Co-op moved for judgment as a matter of law on all of Mid-Kan's claims. The Co-op argued the evidence overwhelmingly showed Mid-Kan waived its rights under the LTS and ROFR provisions because it was aware of the grain being sold and moved out of the Dundee facility. The Co-op further argued Mid-Kan's fraud claim related to the 2012 shrinkage was barred by the statute of limitations because Mid-Kan suspected there was a misrepresentation of the moisture content no later than 2013. The district court denied the Co-op's motion on the breach of contract claims but indicated it would take the fraud claim under advisement. The district

court later denied the Co-op's motion for judgment as a matter of law on the fraud claim during the jury instruction conference.

The jury found the Co-op breached the LTS and ROFR provisions, wrongfully demanded payment from Mid-Kan for the grain shrinkage, and awarded Mid-Kan damages as follows: $832,652 for breach of the ROFR provision; $1,306,930 for breach of the LTS provision; and $129,967 for the shrinkage payment. The jury found the Co-op was entitled to $280,000 in damages on its counterclaim. The Co-op filed a posttrial motion to alter or amend judgment, which the district court denied. The Co-op timely appealed. Mid-Kan timely cross-appealed. Additional facts are set forth as necessary.

ANALYSIS

*Venue*

In its answer to Mid-Kan's petition, the Co-op raised numerous affirmative defenses. It did not, however, challenge Pawnee County as a proper venue for the proceedings. Instead, the question of venue arose months later, after Mid-Kan's second unsuccessful attempt to bifurcate its ejectment request from its claims for fraud and breach of contract. At that time, the Co-op asked the district court to transfer the case under K.S.A. 60-609 to Barton County, where the grain storage facility was located. The district court denied the transfer motion, reiterating its conclusions that the primary claim was for breach of the lease and ejectment would only become relevant when or if Mid-Kan prevailed on its contract claim.

On appeal, the Co-op changes tack, arguing for the first time that the venue question went to the district court's subject matter jurisdiction to hear any aspect of the case under K.S.A. 60-601(b)(1). Accordingly, the Co-op argues the entire judgment is void because the matter should have been filed and litigated in Barton County.

8

Whether jurisdiction exists is a question of law over which our scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). "Whether a judgment is void for lack of jurisdiction is a question of law over which an appellate court's review is unlimited. [Citation omitted.]" *Miller v. Glacier Development Co., LLC*, 293 Kan. 665, 669, 270 P.3d 1065 (2011). Because questions of subject matter jurisdiction concern the power of the court to hear a case at all, a court's subject matter jurisdiction may be challenged at any time—including for the first time on appeal. See *Emerson*, 306 Kan. at 33. To the extent the Co-op's argument requires us to interpret statutes, it also presents a question of law over which we have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

"Jurisdiction and venue are not interchangeable." *In re Marriage of Yount & Hulse*, 34 Kan. App. 2d 660, 664, 122 P.3d 1175 (2005). In most cases, "venue is not a jurisdictional matter, but a procedural one." *Shutts v. Phillips Petroleum Co.*, 222 Kan. 527, 546, 567 P.2d 1292 (1977). This is because, unlike subject matter jurisdiction, venue does not generally affect a district court's authority to hear a case. Instead, considerations of venue involve more practical aspects of litigation—namely, "the convenience of the parties and witnesses and the interests of justice." K.S.A. 60-609(a). For this reason, courts have found that most venue challenges are waived if they are not asserted at the outset of litigation. See *Akesogenx Corp. v. Zavala*, 55 Kan. App. 2d 22, 37, 407 P.3d 246 (2017). And a district court likewise has broad discretion to grant or deny a party's request for a change of venue. *Hernandez v. Pistotnik*, 58 Kan. App. 2d 501, 517, 472 P.3d 110, *rev. denied* 312 Kan. 891 (2020).

In some instances, however, the two principles overlap. In particular, Kansas courts have found that when statutory venue provisions are rooted in principles of a district court's territorial jurisdiction, venue requirements take on jurisdictional components. See, e.g., *Johnson v. Zmuda*, 59 Kan. App. 2d 360, 363, 481 P.3d 180 (2021) (district court has no authority to issue writ of habeas corpus directed to person

9

held outside territorial jurisdiction of judicial district). Similarly, in *Raynolds v. Row*, 184 Kan. 791, 795, 339 P.2d 358 (1959), our Supreme Court held: "[T]he venue provisions of [K.S.A.] 60-501"—the predecessor to the venue statute involved in this case—"are jurisdictional, and jurisdiction of the subject matter cannot be waived by the parties. [Citation omitted.]" This is because a district court only has jurisdiction to resolve questions that directly affect the title to real estate within its district. See 184 Kan. at 794-95.

The Co-op argues that because venue under K.S.A. 60-601 is jurisdictional, the district court never had subject matter jurisdiction over this case and the resulting judgment was void. We disagree because we, like the district court, find that the venue restrictions in K.S.A. 60-601 do not apply here.

K.S.A. 60-601(b)(1) provides:

"(b) *Generally*. "The following actions must be brought in the county in which the real estate is situated, except if it be an entire tract situated in two or more counties, or if it consists of separate tracts situated in two or more counties, the action may be brought in any county in which any tract or parts thereof is situated:

(1) Actions in ejectment or for the recovery of real property or any estate or interest therein, or to determine adverse claims."

The Co-op's jurisdiction argument is unpersuasive because it is founded on an erroneous contention the underlying action was for ejectment of the Co-op from the Dundee facility. Granted, in Mid-Kan's prayer for relief in its petition, Mid-Kan asked for an order evicting the Co-op from the Dundee facility. But the substance of Mid-Kan's claims related to fraud, unpaid rent, breach of contract, and other expenses Mid-Kan incurred as a result of the Co-op's failure to honor the parties' agreement(s). And the Kansas Supreme Court has long recognized that K.S.A. 60-601's venue restrictions do not apply when a case primarily concerns a breach of contract issue that involves land when

10

"the title [of the real estate] is not drawn into question or the realty is only incidentally and not directly affected." *Roberts v. Cooter*, 184 Kan. 805, 812, 339 P.2d 362 (1959).

We recognize, in fairness to the Co-op, Mid-Kan muddied the waters by seeking to bifurcate the proceedings to eject the Co-op from the Dundee facility because of a pending offer from a third party to buy the facility. In its briefing, Mid-Kan is somewhat opaque in discussing its request for ejectment. Mid-Kan asserted in its motion to bifurcate: "It is proper and warranted for the Court in this case to bifurcate and conduct a separate trial on the question of ejectment." But the Co-op also opposed Mid-Kan's motion, asserting ejectment was a premature issue since it had not been established the Co-op breached or agreed to terminate the lease. The district court agreed with the Co-op and denied Mid-Kan's motion. It later denied the Co-op's motion to transfer venue for the same reason:

> "I think this case really comes down to the fact that this is principally a breach of contract action. And that's what the court found, that's what the [Co-op] argued in requesting the court not to bifurcate the case. The court agreed with that. It doesn't involve ownership or title to the Dundee facility. It's a transitory action and not local. . . . [I]f a trier of fact determines that the [Co-op] breached the lease and [Mid-Kan] is entitled to damages and or cancellation, [ejectment] will in fact most likely result if not by a voluntary relinquishment, by court order. And if it becomes an issue at that point in time, there is nothing to say that a judgment entered in Pawnee County could not be filed in Barton County for purposes of getting a [writ] of assistance to enforce the ejectment action.
> 
> "That would be the manner in which the ejectment would potentially, remedy would potentially be involved. This involves the breach of contract claim by [Mid-Kan], it involves an answer by the [C]o-op that it did not breach the contract and in fact a counter claim that [Mid-Kan] breached the contract. There is nothing improper in venue by this case remaining in Pawnee County."

The pretrial order likewise specified Mid-Kan's theories of recovery were for damages for breach of the ROFR and LTS provisions, recovery for unpaid rent, and

11

recovery for the Co-op's misrepresentations on the grain shrinkage issue; the Co-op sought counterclaim damages for breach of contract. Thus, while ejectment and/or eviction of the Co-op from the Dundee facility was *discussed* at various points in the pretrial proceedings, those points were never *adjudicated* at trial. The jury instructions and verdict reflect the jury was never asked to decide whether either party was entitled to *termination* of the lease; rather, the factual issues decided at trial all related to whether the parties *breached* the lease.

Again, our Supreme Court has held matters incidentally affecting a party's access to or use of a property are not within the scope of K.S.A. 60-601(b)(1)'s local venue requirement. See *Farha v. Signal Companies, Inc.*, 216 Kan. 471, 477-78, 532 P.2d 1330 (1975) ("'. . . [I]n order to give a court jurisdiction under such a statute [governing local actions], it must appear as a general rule that the title will be directly affected by the judgment of the court; and it will not suffice for it to be incidentally, collaterally, or even necessarily inquired into if the judgment can be satisfied by the payment of money. . . .'"). In denying the Co-op's motion to transfer venue, the district court correctly recognized the jury's verdict had no direct effect on an interest in real property given the specific claims at issue. While it was possible that a verdict in this case could later affect the Co-op's access to the Dundee facility, that would only occur if Mid-Kan sought a writ of assistance in Barton County to eject the Co-op from the property. But the fact remains that all the issues in this case stem from an action for breach of contract.

Finally, as a practical matter, Mid-Kan's request in its pleadings to terminate the lease and eject the Co-op from the facility never became a litigated issue in the case. In December 2018, the Co-op gave notice to Mid-Kan it intended to vacate the facility on December 31, 2019, because Mid-Kan would no longer accept grain deliveries from the Co-op. The Co-op claims this was necessary based on the lease termination provision of the parties' contract. Thus, it seems logically at odds for the Co-op to argue the effect of Mid-Kan's suit, once adjudicated, would jeopardize a leasehold interest which the Co-op

12

gave notice of intent to vacate and terminate almost a year before trial. Moreover, the Co-op's counterclaims asserting damages for *not* being able to store grain at the Dundee facility in 2018 and 2019 necessarily reflect it had no meaningful ongoing use or intended occupancy of the premises at the time of trial.

In sum, none of the claims addressed at trial related to ejectment, recovery of real property or any interest therein, or a determination of adverse claims; therefore, K.S.A. 60-601(b)(1) was not controlling for venue. "[T]he fact that an inquiry may incidentally arise as to the ownership of the property does not change the nature of the action or give it the character of a local action[.]" *Farha*, 216 Kan. at 477. Because K.S.A. 60-601(b)(1) does not apply, the Co-op has not demonstrated that the district court lacked jurisdiction to hear this case. Nor has it shown the district court abused its discretion by retaining venue in Pawnee County, where the Co-op's principal office is located. See K.S.A. 60-604(1). We thus proceed to consider the merits of the remaining issues on appeal.

*Dr. Roberts' Testimony Properly Admitted*

The Co-op argues the district court erred in admitting expert testimony from Dr. Roberts in support of Mid-Kan's damages calculation from the breach of the ROFR provision. "A district court's admission of expert testimony is generally reviewed for an abuse of discretion. [Citation omitted.]" *In re Care & Treatment of Cone*, 309 Kan. 321, 325, 435 P.3d 45 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

As Mid-Kan correctly points out, the Co-op failed to contemporaneously object to Dr. Roberts' testimony at trial. In its reply brief, the Co-op unpersuasively asserts its pretrial motion was sufficient to preserve its objection for appellate review. In support of its argument, the Co-op erroneously relies on authority from federal courts discussing

13

preservation of trial errors. This authority is not based on K.S.A. 60-404; rather, it relates to Federal Rules of Civil Procedure. It is expressly contrary to our Supreme Court's controlling interpretation of the contemporaneous objection rule under K.S.A. 60-404 as explained in *State v. Ballou*, 310 Kan. 591, 613-14, 448 P.3d 479 (2019) (pretrial objections alone generally insufficient to preserve issue for appeal; K.S.A. 60-404 requires "timely interposed objection," which means objection must come between attempt to offer evidence and its admission at trial).

We are duty-bound to follow Supreme Court precedent absent some indication our Supreme Court is departing from its prior position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). There is no indication, nor has the Co-op cited any authority, suggesting our Supreme Court is departing from its position in *Ballou*. Accordingly, the Co-op's contention its pretrial objections alone sufficiently preserved the issue for appeal is not supported by Kansas law. We deem the issue waived or abandoned for failure to contemporaneously object at trial. See *Ballou*, 310 Kan. at 613-14.

As Mid-Kan further points out, the Co-op failed to comply with Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 35) because it has not explained a valid exception to allow this issue to be considered on appeal. Our Supreme Court held Rule 6.02(a)(5) is to be strictly enforced and litigants who fail to follow it risk a ruling the issue is waived or abandoned due to improper briefing. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Accordingly, we find the Co-op has waived the issue for failure to properly argue and explain an exception which would permit appellate review. Moreover, as our Supreme Court has recently explained, the decision to review an unpreserved error is discretionary. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

Even if the Co-op had properly cited an exception, we would still decline to review the issue because the Co-op's substantive argument generally presents an improper basis for reversal on appeal. The Co-op's argument largely attacks Dr. Roberts'

14

conclusion rather than his qualifications and the methodology used in reaching his expert opinion. As our Supreme Court recently held in *State v. Lyman*, 311 Kan. 1, 28, 455 P.3d 393 (2020), the focus in determining the admissibility of expert testimony must be the principles and methodology used, not the conclusion reached. Even if the Co-op had properly addressed the preservation of this issue, its merits argument generally fails to establish any abuse of discretion in the district court's decision to admit Dr. Roberts' testimony. This is because the Co-op's factual argument purportedly attacking the methodology used by Dr. Roberts really amounts to a complaint about the cumulative effect of the alleged factual errors on the weight and credibility of his conclusion. The Co-op makes no contention on appeal Dr. Roberts was unqualified to offer an expert opinion, and it explicitly conceded at trial there was no dispute as to his credentials. But we decline to consider this issue on the merits given the Co-op's failure to timely object at trial and further failure to properly cite and argue an exception to the preservation rule. See *Gray*, 311 Kan. at 170; *Ballou*, 310 Kan. at 613-14; *Daniel*, 307 Kan. at 430.

*Mid-Kan's Fraud Claim*

The Co-op argues it was entitled to judgment as a matter of law on Mid-Kan's fraud claim because Mid-Kan failed to file suit within the applicable statute of limitations. Accordingly, the Co-op argues the district court erred in submitting the claim to the jury.

Appellate courts exercise de novo review over a district court's ruling on a motion for judgment as a matter of law. *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

> "'When ruling on a motion for [judgment as a matter of law], the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could

15

reach different conclusions based on the evidence, the motion must be denied. A similar analysis must be applied by an appellate court when reviewing the grant or denial of a motion for [judgment as a matter of law.]' [Citations omitted.]" *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 454, 437 P.3d 929 (2019).

Under K.S.A. 60-513(a)(3), a plaintiff has two years to file an action based on fraud from the time the fraud is discovered. But our appellate courts have held the statute of limitations is not triggered by actual knowledge of the fraud; rather, "[u]nder Kansas law, a fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered." *Waite v. Adler*, 239 Kan. 1, 6, 716 P.2d 524 (1986). However, as Mid-Kan points out, mere suspicion is not enough to trigger the statute of limitations where the plaintiff forgoes further investigation after being lulled into confidence by the other party's actions. In other words, if the party committing fraud covers up the initial fraud with additional lies, omissions, or misrepresentations, the statute of limitations is not triggered. See *Price v. Grimes*, 234 Kan. 898, 900, 677 P.2d 969 (1984).

Here, whether Mid-Kan failed to file suit within the applicable statute of limitations is a disputed point of fact fatal to the Co-op's argument on appeal. As another panel of this court recently held in *Mid-Continent Anesthesiology, Chtd. v. Bassell*, 61 Kan. App. 2d 411, 430, ___ P.3d ___, 2021 WL 5991899 (No. 122,277, filed December 17, 2021), *petition for rev. filed* January 14, 2022, where there are material disputes of fact as to when a party's cause of action accrued, summary judgment on the basis of the statute of limitations must be denied.

The Co-op relies on cross-examination testimony from Roenbaugh, wherein he stated he was suspicious of the Co-op's demand for payment in 2012 for grain shrinkage. Mid-Kan paid the Co-op for the shrinkage but asked the Co-op to refund the money the same day. The Co-op effectively asks us to view this testimony in isolation and strongly

characterizes the facts in a light most favorable to its position. This is, of course, contrary to the controlling standard of review. See *Dawson*, 309 Kan. at 454.

The Co-op's assertions in its brief fail to account for the clarification of the events reflected in Roenbaugh's testimony on redirect examination. Roenbaugh explained he looked into the matter but could not find anything in Mid-Kan's records as to the moisture content of the grain when it was delivered to the Dundee facility. He spoke with Mounday, who assured Roenbaugh the Co-op would investigate its records and get back to him. Roenbaugh's testimony, viewed as a whole, reflected he asked the Co-op to *consider* refunding Mid-Kan for the payment *if* there was, in fact, an error on the Co-op's part as to the correct moisture content of the grain at the time of delivery.

Nothing in Roenbaugh's testimony incontrovertibly establishes Mid-Kan was actually aware or had definitive suspicion of fraud as of 2013. Mid-Kan's subsequent actions are also inconsistent with such a notion. Roenbaugh testified Mid-Kan suspected the purported shrinkage issue may have been the result of theft of the grain as opposed to a loss of moisture. Therefore, Mid-Kan installed cameras at the Dundee facility to investigate whether a thief was stealing grain from the silos. In other words, Mid-Kan's actions in 2013 reflected a belief that neither improper storage on its part, nor fraud on the Co-op's part, was responsible for the discrepancy. Roenbaugh asserted he had no reason to believe the Co-op misrepresented the moisture content of the grain until he received discovery documents related to Mid-Kan's claim under the long-term storage provision. In the interim, Roenbaugh had requested information from the Co-op, but each time he asked, he was told the Co-op would get back to him at a later time.

The jury was free to credit or reject Roenbaugh's explanation of the events. If the jury accepted Roenbaugh's account, his testimony, and all reasonable inferences fairly derivable therefrom, supports tolling the statute of limitations for Mid-Kan's fraud claim by showing Mid-Kan was lulled into confidence by the Co-op's subsequent

17

representations. See *Price*, 234 Kan. at 900. Thus, the district court properly denied the Co-op's motion for judgment as a matter of law and submitted the claim to the jury. See *Mid-Continent Anesthesiology, Chtd.*, 61 Kan. App. 2d at 430.

Mid-Kan argues the Co-op waived this issue because it did not object to the jury instruction and failed to propose or request its own jury instruction on the statute of limitations. Mid-Kan is incorrect in asserting the Co-op failed to object to the jury instruction on Mid-Kan's fraud claim. In the full context of the jury instructions conference, it was clear the Co-op objected to the jury instruction on Mid-Kan's fraud claim based on its pending motion for judgment as a matter of law, which had been made at the close of Mid-Kan's case-in-chief. The Co-op's position was the matter should not be submitted to the jury at all, so it was not appropriate to give any instruction on the fraud claim. The district court stated it would take the motion under advisement and had not yet ruled prior to the jury instructions conference. The district court effectively addressed both issues at the same time, finding there were genuine disputes of material fact as to when Mid-Kan's cause of action accrued and, therefore, denied the Co-op's motion for judgment as a matter of law. Based on its denial of the motion, the district court found it was appropriate to submit the matter to the jury and instruct accordingly. The district court also made an explicit finding prior to instructing the jury that the Co-op made an objection to Mid-Kan's fraud claim the previous day on the basis of the statute of limitations, which the district court had overruled, and the issue had been preserved.

The Co-op did not fail to object to the jury instruction, but its claims of jury instruction error on appeal are part and parcel to its unpersuasive argument it was entitled to judgment as a matter of law. The Co-op does not claim there was an error *in* the jury instruction; it argues it was error *to give* the instruction. The Co-op has not waived the issue for failure to object below; rather, its argument is simply unpersuasive.

18

As a final note, the Co-op failed to request its own jury instruction on the statute of limitations. The Co-op could have requested a specific question be submitted to the jury about the statute of limitations and did not at any time. We find this distinction important and agree with Mid-Kan's argument this is separate grounds for finding the Co-op waived the issue because it was not preserved. The Co-op's motion for judgment as a matter of law was properly denied, and the Co-op fails to allege any additional errors undermining the jury's verdict on Mid-Kan's fraud claim.

*Mid-Kan's Breach of Contract Claims*

The Co-op argues the jury's finding it breached the ROFR and LTS provisions was contrary to the evidence at trial. Specifically, the Co-op argues the evidence established Mid-Kan was aware the Co-op was transporting and selling grain stored at the Dundee facility to other buyers more than five years before Mid-Kan filed suit, and Mid-Kan never attempted to exercise its rights under the ROFR provision. Therefore, the Co-op essentially argues it was entitled to judgment on the basis of waiver or estoppel because Mid-Kan failed to take any action within the statute of limitations after it first became aware of the breaches. See K.S.A. 60-511(1) (statute of limitations for breach of contract is five years from date of breach).

When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011). "[W]hether a party has waived a contract term is a question of fact. [Citation omitted.]" *Thoroughbred Assoc. v. Kansas City Royalty Co.*, 58 Kan. App. 2d 306, 322, 469 P.3d 666 (2020).

19

Much like its argument on Mid-Kan's fraud claim, the Co-op's argument on this issue is flawed because there were genuine disputes of fact as to whether or when Mid-Kan was aware the Co-op breached the ROFR and LTS provisions. The parties' agreement provided the Co-op could remove grain from the Dundee facility if necessary to make room for upcoming crops. Mid-Kan was aware the Co-op stored additional grain at other facilities as necessary. Roenbaugh testified Mid-Kan was unaware if the grain being moved from the Dundee facility was being sold to other buyers. According to Roenbaugh, the Co-op never notified Mid-Kan of any offer(s) by other buyers to purchase grain stored in the Dundee facility. Roenbaugh testified Mid-Kan moved the grain at the Co-op's request based on the belief the Co-op needed to do so in order to make room for upcoming crops. Roenbaugh claimed Mid-Kan had no reason to believe the Co-op had violated the lease provisions until the amount of stored grain dropped off dramatically in 2017.

The Co-op asserts Roenbaugh's testimony he began tracking the Co-op's shipments into and out of the facility in 2013 established Mid-Kan knew of or had sufficient information to investigate its cause of action for breach of contract at that time. However, Roenbaugh's redirect testimony creates a legitimate factual dispute. The jury was free to weigh the evidence and credit or reject any conflicting evidence bearing on the Co-op's waiver defense. To reverse the jury's verdict on the basis of waiver or estoppel would require us to reweigh evidence, determine credibility, and/or resolve conflicting evidence, which we cannot do. *Wolfe Electric, Inc.*, 293 Kan. at 407.

The Co-op's argument on appeal specifically relates to the evidence underlying the jury's verdict. The Co-op does not explicitly argue it was entitled to judgment as a matter of law based on the statute of limitations, in and of itself, as a defense to an action for breach of contract. To the extent it attempted to argue the point in its opening brief, the point was incidentally raised but not argued; therefore, we deem the issue abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). The Co-op's argument

*implicitly* touches on the statute of limitations based on its contention Mid-Kan failed to act within five years of the initial breach(es). Thus, the Co-op believed Mid-Kan waived its rights under the ROFR and LTS provisions. See K.S.A. 60-511(1).

In its reply brief, the Co-op asserts for the first time it was entitled to judgment as a matter of law on the statute of limitations for Mid-Kan's breach of contract claims. This is not a proper argument. "The issues stated in an appellant's brief are binding." *Bryson v. Wichita State University*, 19 Kan. App. 2d 1104, 1106, 880 P.2d 800 (1994). "A reply brief may not be submitted unless made necessary by new material contained in the appellee's or cross-appellee's brief." Supreme Court Rule 6.05 (2022 Kan. S. Ct. R. at 38). The Co-op's additional statute of limitations argument in its reply brief is not responsive to Mid-Kan's arguments in its appellee brief or in the cross-appellant section of its brief. In any event, even if the argument was properly before this court, it is unpersuasive because the evidence supporting the jury's verdict necessarily demonstrates the Co-op was not entitled to judgment as a matter of law. The Co-op has not shown it is entitled to any relief on Mid-Kan's breach of contract claims.

*Mid-Kan's Cross-appeal*

In its cross-appeal, Mid-Kan argues the district court erred in allowing Barnes to testify about the Co-op's damages as a result of not being able to store grain at the Dundee facility in 2018 and 2019. Mid-Kan asserts Barnes' testimony should have been excluded because it was based on a financial document which the Co-op had prepared prior to trial but had not given to Mid-Kan, despite its discovery request for such documents, and because the document was never introduced into evidence. See K.S.A. 2020 Supp. 60-237(c) ("If a party fails to provide information or identify a witness as required by K.S.A. 60-226[b][6] or [e], and amendments thereto, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless."). Mid-Kan further

contends Barnes' testimony violated the best evidence rule because his testimony about how many bushels of grain the Co-op was unable to store and the lost profits from the same was effectively a recitation of the contents of the document. See K.S.A. 60-467(a) ("As tending to prove the content of a writing, no evidence other than the writing itself is admissible . . . ."). Accordingly, Mid-Kan argues, the district court erred in instructing the jury on the Co-op's counterclaim because the evidence supporting the instruction should not have been admitted at trial.

Admission of evidence involves several legal considerations: determining relevance; identifying and applying legal principles including rules of evidence; and weighing prejudice against probative value. See *Biglow*, 308 Kan. at 892. Depending on the consideration at issue, an appellate court applies different standards of review. First, a court must determine whether the evidence is relevant. "'All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or court decision.' [Citation omitted.]" *Nauheim*, 309 Kan. at 153; see K.S.A. 60-407(f).

K.S.A. 60-401(b) defines relevant evidence as "evidence having any tendency in reason to prove any material fact." Relevance has two elements: a materiality element and a probative element. Evidence is material when the fact it supports is in dispute or in issue in the case; evidence is probative if it has any tendency to prove any material fact. The appellate standard of review for materiality is de novo, and probativity is reviewed for abuse of discretion. *Kansas City Power & Light Co. v. Strong*, 302 Kan. 712, 729, 356 P.3d 1064 (2015). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow*, 308 Kan. at 893.

But even if evidence is relevant, a district court has discretion to exclude it where the court finds its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. We review any such determination for an abuse of

discretion. *Wendt v. University of Kansas Med. Center*, 274 Kan. 966, 979-80, 59 P.3d 325 (2002).

In a civil case,

"a trial court is required to give an instruction supporting a party's theory if the instruction is requested and there is evidence supporting the theory which, if accepted as true and viewed in the light most favorable to the requesting party, is sufficient for reasonable minds to reach different conclusions based on the evidence." *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 419, 228 P.3d 1048 (2010).

Appellate courts consider jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether they reasonably could have misled the jury. *Siruta*, 301 Kan. at 775.

Mid-Kan's argument is unpersuasive because the record reflects its objections, at and prior to trial, were somewhat different from its present complaints. Although never explicitly ruled on by the district court as such, Mid-Kan generally asserted Barnes' testimony on the Co-op's counterclaim damages was contrary to the best evidence rule. When Barnes was asked how much the Co-op lost as a result of not being able to store grain at the Dundee facility, Mid-Kan interjected, asking: "I'm presuming that there's a document some place which would be the best evidence?" But the district court simply held the Co-op needed to lay more foundation before the question could be answered. Barnes subsequently explained how many bushels of grain the Co-op had stored at the Dundee facility each year between 2013 and 2017. When Barnes then testified about the amount of grain the Co-op would have stored in 2018 and 2019, Mid-Kan objected, and the following exchange occurred:

"[MID-KAN COUNSEL]: Your Honor, pardon me. May I voir dire the witness, and [add] an objection?

23

"THE COURT: As to the calculation of—(interrupted)

"[MID-KAN COUNSEL]: As to the idea of generally, yes.

"THE COURT: I mean, I'll allow you to voir dire on the qualifications to determine the calculation for the opinion he's about to give.

"[MID-KAN COUNSEL]: May we approach?

"THE COURT: You may.

"[MID-KAN COUNSEL]: Your Honor, I will note for the record, an objection to his testimony on the subject.

"THE COURT: Yes, sir. The record will so reflect."

When the Co-op's counsel asked Barnes about the Co-op's expected profit margin on the bushels it was unable to store, Mid-Kan again objected, and the following exchange occurred:

"[MID-KAN COUNSEL]: Your Honor, I would object again. As [Co-op's counsel] knows, we requested financial statements during discovery from the [C]o-op, they refused to provide them, and we've not seen it, had not had any opportunity to look at this, there's not a document of that—(interruption)

"THE COURT: Sustained on foundation.

"[MID-KAN COUNSEL]: Thank you."

The Co-op's counsel then asked Barnes appropriate foundational questions regarding his personal knowledge of the Co-op's profit margin for stored grain. Barnes testified the Co-op would have stored 700,000 bushels in total at a profit of 40 cents per bushel; therefore, it lost $280,000. Mid-Kan did not object to any further testimony on direct examination, nor did it object on the basis Barnes' testimony regarding the Co-op's damages did not lead to the introduction of an exhibit reflecting the same. Barnes' testimony generally reflects he was testifying based on his personal knowledge of the facts and was not reciting the contents of a document, and the Co-op's counsel did not ask about such a document. Further, because Mid-Kan failed to get a clearer ruling from the district court, we cannot find any such document would have contained matters beyond

24

Barnes' personal knowledge. The best evidence rule applies to testimony "tending to prove the content of a writing." K.S.A. 60-467(a). We observe nothing in Barnes' testimony suggesting it was offered to prove the contents of a document. Just because the same information may have been contained in a document does not mean Barnes' testimony violated the best evidence rule.

As to the purported discovery violation, Mid-Kan made a motion in limine, asserting:  "All *exhibits* that were responsive to, but not produced in response to plaintiff's document requests, should be excluded." (Emphasis added.) The district court denied the motion, finding it was premature and not sufficiently specific. Curiously, though, Mid-Kan's motion in limine did not challenge any information related to the Co-op's damages on its counterclaim; rather, Mid-Kan sought to exclude evidence related to the Co-op's affirmative defenses of waiver and estoppel.

There are two problems with this objection as extended to Barnes' testimony. First, the motion in limine was specific to exhibits, not testimony. Mid-Kan did not ask the district court to exclude testimony potentially related to documents prepared in advance of litigation but not intended to be introduced into evidence. Further, the exhibits Mid-Kan sought to exclude were those "related to [the Co-op's] affirmative defenses of waiver and equitable estoppel." Evidence supporting the Co-op's damages on its counterclaim has no rational relationship to any affirmative defenses against Mid-Kan's claims. Second, the motion in limine was based on the Co-op's alleged failure to give Mid-Kan the requested discovery, not the best evidence rule. Both grounds might separately or collectively support excluding Barnes' testimony and are distinct bases upon which the district court could have done so. See K.S.A. 2020 Supp. 60-237(c); K.S.A. 60-467.

During its cross-examination of Barnes, Mid-Kan elicited testimony indicating a document had been prepared reflecting the number of bushels the Co-op might otherwise have stored at the Dundee facility in 2018 and 2019, and the average revenue per bushel

it lost because it was unable to do so. But Mid-Kan failed to renew or expand its objection contemporaneous with Barnes' cross-examination testimony and had not availed itself of the district court's earlier invitation to voir dire Barnes when it objected to his direct examination testimony.

It was not until the jury instruction conference Mid-Kan finally made an argument implying Barnes' testimony about the Co-op's damages should have been excluded because it was based on a document not admitted into evidence and not turned over in discovery. Still, Mid-Kan's argument was vague in terms of the ground(s), if any, for excluding Barnes' testimony. Rather, Mid-Kan explicitly argued the Co-op's counterclaim should be struck and the jury should not be instructed on the Co-op's counterclaim, stating:

> "[W]e don't really think there's any evidence that supports [giving the instruction], and in any event, as we [alluded] to during cross examination of Mr. Barnes, we asked for financial statements from the [Co-op], they didn't give them to us. This obviously is relevant to this issue. So, we think that claim frankly, should be struck."

However, the Co-op had already rested, and Mid-Kan indicated it did not have rebuttal evidence. The district court also asked the parties if they had any motions they would like it to consider prior to taking a recess in advance of the jury instruction conference. Mid-Kan indicated it did not have any. The district court never made a clear ruling on Mid-Kan's argument, if any, that Barnes' testimony should be excluded or that the Co-op's counterclaim should be stricken on the basis of the best evidence rule and/or a discovery violation. Its ruling was limited to considering whether there was enough evidence to submit the issue to the jury, stating:  "I think suitable questions of fact have been presented on that issue for a jury to determine. So, I will modify that to a claim of $280,000."

26

After considering various issues the parties raised in relation to other instructions, the district court asked: "Is there anything else we need to discuss?" In response, Mid-Kan only discussed how long it anticipated closing arguments would take and whether it would be best to wait to do so until the following day. After the district court dismissed the jury for the evening, it discussed some additional instructional issues with the parties. Mid-Kan took issue with one proposed jury instruction, stating, in pertinent part:

> "As to 124.16 which is the [waiver] issue, Your Honor, I know what the court's perspective is about that. I just want to be sure that we have an appropriate objection on record for that . . . . [A]s the court knows, our argument is that that's not fair, so, simply noted for the record."

The objected-to instruction related to the Co-op's defense that Mid-Kan waived its rights under the contract because it was aware of the alleged breaches of the ROFR and LTS provisions but took no action to stop them. But Mid-Kan did not indicate any further objection to the Co-op's counterclaim or the jury instruction for the same.

Prior to instructing the jury the following day, the district court again discussed the jury instructions with the parties. Mid-Kan limited its response to the Co-op's waiver argument as an affirmative defense and counsel's desire to divide his time for closing argument.

As to the alleged discovery violation, we find Mid-Kan waived the argument(s) it now makes on cross-appeal for failure to properly raise and frame the argument below. See *Ballou*, 310 Kan. at 613-14. Mid-Kan never gave the district court a sufficient opportunity to make the necessary findings to rule on this issue, and the lack of findings precludes our meaningful review. Based on Barnes' testimony on direct examination and cross-examination, it was never clear Barnes' testimony reflected information he learned from the financial document(s) the Co-op prepared. Rather, it appears the document(s)

simply reflected matters of which Barnes was already aware. It was clear, however, no such document was introduced into evidence through Barnes' testimony, and the Co-op never asked Barnes to testify about the contents of the document(s).

Mid-Kan's argument that Barnes' testimony should have been excluded because some relevant financial documents were not produced in discovery is unpersuasive. Mid-Kan was clearly on notice of the Co-op's counterclaims as reflected by the pleadings, pretrial motions, pretrial order, and other filings. But with this knowledge, Mid-Kan never filed a motion to compel discovery *on this issue* in spite of numerous readily apparent, objectively reasonable bases to conclude the Co-op likely had relevant financial documents. Mid-Kan filed a motion to compel discovery for "contracts that would demonstrate the price and other material terms upon which [the Co-op] merchandised grain to third parties from the Dundee Facility." Mid-Kan further complained about the format of various unrelated documents the Co-op produced. Mid-Kan also sought to compel discovery as to any written communications between Mounday and Barnes during Barnes' deposition. But Mid-Kan's motion to compel discovery never requested any documents the Co-op had to support its counterclaim damages.

Mid-Kan now claims Barnes' testimony was subject to exclusion under K.S.A. 2020 Supp. 60-237(c) based on the Co-op's failure to supplement its response(s) to Mid-Kan's discovery request(s). K.S.A. 2020 Supp. 60-237(c) refers to a party's failure "to provide information" as required by K.S.A. 2020 Supp. 60-226(e). Under K.S.A. 2020 Supp. 60-226(e)(1):

> "(e) *Supplementing disclosures and responses.* (1) *In general.* A party who has made a disclosure under subsection (b)(6), or who has responded to an interrogatory, request for production or request for admission, must supplement or correct its disclosure or response:
>
> (A) In a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective

28

information has not otherwise been made known to the other parties during the discovery process or in writing; or

       (B) as ordered by the court."

Because Mid-Kan failed to timely raise the issue before the district court at trial or specifically seek the complained-of documents through a motion to compel discovery, there is no factual record to establish the Co-op "[learned] that in some material respect the disclosure or response [was] incomplete or incorrect," nor had such disclosure been "ordered by the court." K.S.A. 2020 Supp. 60-226(e)(1). Whatever the reason(s) may be for the Co-op not turning over the documents and Mid-Kan not filing a motion to compel discovery on this particular evidence, those are factual questions the district court needed to resolve.

The present record is insufficient to find a discovery violation occurred to warrant exclusion of Barnes' testimony. We further find Mid-Kan's failure to take appropriate actions prior to trial, and failure to clearly object and obtain an explicit ruling on these grounds at trial, caused the deficiencies in the record. Accordingly, we deem Mid-Kan's discovery violation argument waived. See *Ballou*, 310 Kan. at 613-14; see also *State v. Allen*, 314 Kan. 280, 284, 497 P.3d 566 (2021) (appellate court abuses its discretion as matter of law if it considers an unpreserved issue without sufficient factual record to support claims of party asserting error on appeal).

Mid-Kan has not established any error in the admission of Barnes' testimony, and Barnes' testimony provided appropriate evidence for the district court to instruct the jury on the Co-op's counterclaim. Mid-Kan makes no argument the jury instruction would have been inappropriate even with Barnes' testimony; thus, it has necessarily waived any additional challenge to the jury instruction. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issue not briefed deemed waived or abandoned). Accordingly, we find the entirety of Mid-Kan's cross-appeal unpersuasive.

Affirmed.